# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
Case No. 3:17-cv-732

HYUNDAI MOTOR AMERICA, INC. and
HYUNDAI MOTOR COMPANY,

        Plaintiffs,

vs.

DIRECT TECHNOLOGIES
INTERNATIONAL, INC. d/b/a DTI, INC.,

        Defendant.

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs HYUNDAI MOTOR AMERICA, INC. ("HMA") and HYUNDAI MOTOR COMPANY ("HMC") ("HMA" and "HMC" are collectively referred to where appropriate as "Hyundai" or "Plaintiffs") assert the following claims against Defendant Direct Technologies, Inc. d/b/a DTI, INC. ("DTI" or "Defendant" where appropriate).

## NATURE OF ACTION

1.      This is an action for damages and injunctive relief for (1) trademark infringement under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§ 1114, 1116, and 1117; (2) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (3) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) related claims arising under common law and Florida law.

2.      HMC is a world-renowned company that manufactures, sells, and distributes Hyundai-branded automobiles and authorized Hyundai-branded parts through its authorized chain of distribution in the United States and around the world. HMA is the exclusive distributor of those Hyundai-branded automobiles and authorized parts in the United States to Hyundai

authorized dealers on behalf of HMA. The only "Genuine" Hyundai-branded parts and accessories ("Genuine Hyundai Parts") are those that are manufactured by Hyundai-authorized suppliers and are imported into and then distributed throughout the United States by and for HMA through Hyundai's authorized chain of distribution to authorized Hyundai dealers, as described herein.

3. Genuine Hyundai Parts are made to precise specifications and must meet certain quality standards to be sold in the United States. That is not true for Hyundai-branded parts meant for sale in areas of the world outside the United States. Hyundai-branded parts that are not sourced through Hyundai's authorized chain of distribution for the United States may contain numerous material differences – including, but not limited to, packaging, labels, production methods, weight, and performance characteristics – as a result of the difference in specifications to which such parts are manufactured or the actual manufacturing processes themselves, or because such parts are not "first run parts," are "seconds," or are defective or have been rejected during manufacturing quality control. Furthermore, Hyundai-branded parts that are sourced outside of Hyundai's authorized chain of distribution for the United States are materially different in warranty coverage and/or protection and dealer and customer support. As such, the sale of those unauthorized Hyundai-branded parts in the United States constitutes sales of illegal grey-market goods.

4. Defendant DTI is importing, promoting, offering for sale, advertising on the internet through its website (www.dti-parts.com) and through other media, and/or selling unauthorized Hyundai-branded parts, which were intended for sale abroad, and falsely representing that such parts are "genuine" and/or covered by the Hyundai warranty to various Hyundai Authorized Dealers in the United States without notifying those Hyundai dealers that

2

such parts are not Genuine Hyundai Parts, were not sourced through Hyundai's authorized chain of distribution, are not covered by Hyundai warranties, or that the warranty offered (if any) is materially different from the Hyundai warranties. Plaintiffs are informed and believe and thereon allege that Defendant does not offer a warranty on the Hyundai-branded parts it sells that is equivalent to the applicable HMA warranties.

5.     Moreover, Defendant's representations that the parts it sells are Genuine Hyundai Parts causes a likelihood of confusion leading the purchasers of those parts, including Hyundai dealers and others, to believe that the usual HMA warranties apply to these parts when they do not. Defendant's representations regarding the "genuineness" of the parts also make the purchasers of those parts, including Hyundai dealers, unaware of the physical material differences between Defendant's parts and Genuine Hyundai Parts obtained through Hyundai's authorized chain of distribution for the United States and between the Hyundai warranty and whatever warranty Defendant purports to offer.

6.     Defendant is also intentionally causing HMA's authorized dealers to breach their dealer agreement with HMA, as described below, by soliciting dealers to purchase the illegal grey-market parts from Defendant and passing them off to the public as "genuine" when in fact they are not, and the dealers actually purchase these illegal grey-market parts from Defendant believing them to be Genuine Hyundai Parts, when they are not.

## THE PARTIES

7.     HMA is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Fountain Valley, California. HMA has been granted the exclusive license by HMC to distribute Hyundai brand vehicles and Genuine Hyundai Parts in the United States that bear the trademarks, trade names, and/or trade dress of

HMC, and HMA has the right to enforce those rights and/or sub-license those rights to dealers, distributors, and others. HMA only sources parts for sale to Hyundai authorized dealers through Hyundai's authorized chain of distribution for the United States, and only those parts sourced through that authorized chain of distribution are recognized by HMA and the industry as Genuine Hyundai Parts, covered by the applicable Hyundai warranties as described below.

8.     HMA is also the owner of certain registered trademarks associated with the Hyundai line of automobiles and automobile parts. HMA has an economic interest in the trademarks, trade names, trade dress, and designation of origin of the mark "Hyundai" whether used alone or in conjunction with other words or marks.

9.     HMC is a Korean company, located in Seoul, Republic of Korea. HMC manufactures and sells automobiles and automobile parts under the Hyundai brand. HMC is the owner of certain trademarks associated with the Hyundai line of automobiles and automobile parts. HMC has an economic interest in the trademarks, trade names, trade dress, and designation of origin of the mark "Hyundai" whether used alone or in conjunction with other words or marks.

10.     Plaintiffs are informed and believe and thereon allege that Defendant DTI is a Florida corporation, doing business in this Judicial District and within this Division. Furthermore, DTI, directly or indirectly, imports, distributes, advertises, solicits, offers for sale, and/or sells automobile parts, including the illegal Hyundai grey-market automobile parts at issue in this Complaint, through solicitations, including but not limited to through the use of its website (www.dti-parts.com) to third parties within this Judicial District and this Division and throughout the United States.

4

## JURISDICTION AND VENUE

11.    Jurisdiction of this action is premised upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a), and 1338(b), and there is complete diversity between the parties. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The amount in controversy as alleged herein satisfies the jurisdictional threshold of this Court.

12.    This Court has personal jurisdiction over Defendant because Defendant is doing business within this State and this Judicial District and Division, and is importing, promoting, advertising, offering for sale, selling, and distributing the illegal Hyundai grey-market parts at issue in this Complaint into this State and this Judicial District and Division, and which activities have caused and will continue to cause injury and damage to Hyundai within this State, District, and Division and further because Defendant continuously and systematically conducts, transacts, and solicits business in this State and within this District.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts, events, and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.    HMC was established in 1967 as a Korean company and has become a worldwide leader in the automotive market.  HMC currently designs, manufactures, markets, distributes, and sells a wide range of automobile and related automobile parts to over 190 countries throughout the world, including the United States, under the trademark "Hyundai."

15.    HMA is a subsidiary of HMC and, since 1986, HMA has been the exclusive distributor in the United States of Hyundai motor vehicles and Genuine Hyundai Parts.  Those Genuine Hyundai Parts include, but are not limited to, Hyundai Service Kit-Oil Filters (part

number 26300-35504).

16. HMA imports the Genuine Hyundai Parts, including the oil filter (part number 26300-35504), through Hyundai's authorized chain of distribution, as described herein, for sale exclusively to HMA authorized dealers ("Hyundai Dealers"), pursuant to a Dealer Sales and Service Agreement (the "DSSA"), discussed in more detail below.

17. As further described below, the only authorized chain of distribution of Genuine Hyundai Parts in the United States is from authorized manufacturers or suppliers in Korea, through a company called Hyundai Mobis to Mobis Parts America ("MPA"). MPA then distributes or delivers those Genuine Hyundai Parts on behalf of HMA to authorized Hyundai Dealers in the United States and participates in the revenue generated from such sales ("Hyundai's Authorized Chain of Distribution").

18. HMC and/or HMA sell motor vehicles, automotive parts, accessories, and related services, including the Genuine Hyundai Parts, under the following family of registered United States trademarks:

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|------|----------|-------------------|-------|
| HYUNDAI | 1104727 | October 24, 1978 | For International Class 12 for: Cars, trucks and buses |
| HYUNDAI | 3991863 | July 12, 2011 | For International Classes 7 and 12 for: Water pumps for land vehicles; cylinder heads used on engines; pistons for land vehicles; fans for motors and engines; vehicle engine parts, namely, oil coolers; oil filters for land vehicles; vehicle parts, namely, radiator supporting panels; radiator grilles for land vehicles and

For: Bearings for land vehicles, namely, axle bearings, engine bearings, wheel bearings; engines and motors mufflers; clutch covers |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| | | | for land vehicles; transmissions for land vehicles; disk brakes for land vehicles; rearview mirrors for automobiles; windscreen wipers for automobiles; rubber belts for land vehicles; fuel tanks for land vehicles; wheels caps for land vehicles; bumpers for automobiles; hoods for automobiles; doors for automobiles; trunk panels for land vehicles; bumpers for land vehicles; door handles for automobiles; aerials for automobiles; horns for automobiles |
|  | 1569538 | December 5, 1989 | For International Class 12 for: Automobiles and structural parts thereof |
|  | 4065195 | December 6, 2011 | For International Class 12 for: Bearings for land vehicles, namely, axle bearings, wheel bearings; mufflers for land vehicles; transmissions for land vehicles; rearview mirrors for automobiles; bumpers for automobiles; windscreen wipers for automobiles; seat covers for automobiles; tire chains for automobiles; radiator grills for land vehicles; body panels for vehicles; air bags for vehicles; swing doors for vehicle engines; glasses for vehicles, namely, glass windows for vehicles; clutches for land vehicles; fan motors for vehicles; air sensors for vehicles; brake pads for land vehicles; suspensions for vehicles, namely, wheel suspensions, suspension struts; springs for vehicles, namely, coil springs, leaf springs; speed sensors for vehicles; sun roofs for vehicles; fuel gauges for vehicles; oil seals for vehicles, namely, transmission seals; wiper motors for |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| | | | vehicles; control units for vehicles, namely, air suspension valves for controlling suspension height for vehicles, electronic stability system to allow better control and maneuverability of trucks and trailers, sold as an integral component of trucks; pedals for vehicles, namely, brake pedals, gas pedals |

19.     HMC is the owner of U.S. Registration No. 1,104,727; U.S. Registration No. 3,991,863; and U.S. Registration No. 4,065,195 (the "HMC Marks"). HMA is the owner of U.S. Registration No. 1,569,538 (the "HMA Mark"). The HMC Marks and the HMA Mark are collectively referred to as the "HYUNDAI MARKS," copies of which registrations are attached hereto as **EXHIBIT A.**

20.     All of the above federal registrations are in full force and effect and are in good standing.

21.     HMA is also a licensee of the HMC Marks, in association or connection with the promotion, distribution, sale, and/or service of Hyundai brand automobiles and Hyundai Genuine Parts in the United States.

22.     Independent of the foregoing registrations, HMA and/or HMC own and hold common-law rights in the HYUNDAI MARKS, including nationwide common-law trademarks.

23.     The HYUNDAI MARKS have, among others, all been used in commerce continuously in the United States by HMA and/or HMC prior to Defendant's usage of the same or similar marks and designation of origin, as described herein.

24.     HMC and/or HMA exercise great care in selecting authorized Hyundai Dealers in the United States. In doing so, substantial time, money, and effort is expended by HMA and/or

HMC to control the nature and quality of the goods and services the Hyundai Dealers may employ in using the HYUNDAI MARKS. For example, in the United States, Hyundai Dealers are required to perform warranty work using only Genuine Hyundai Parts. Additionally, authorized Hyundai Dealers in the United States market and sell Genuine Hyundai Parts to retail customers.

25. HMA and/or HMC also expend significant time, money, and effort in ensuring that Genuine Hyundai Parts comply with its stringent internal quality standards and with state and federal laws and regulations in the United States.

26. For many years, HMA and/or HMC have incurred substantial expense to advertise Hyundai motor vehicles and/or products, including the Genuine Hyundai Parts and related services, and to further promote and develop the HYUNDAI MARKS. This substantial expenditure of time, money, and effort has resulted in a reputation for exceptionally high quality standards. HMA and/or HMC have also developed marketing strategies and designed packaging, promotional materials, and specific products for the market in the United States, consistent with this reputation and high quality standards. Hyundai vigorously protects its reputation and goodwill by maintaining the highest standards in their products, appearance, and customer service.

27. Because of these efforts, the HYUNDAI MARKS, and the products and services which use them, have developed substantial goodwill and have established secondary meaning in the United States.

28. The HYUNDAI MARKS have been famous in the United States long before the acts of Defendant set forth herein.

## MANUFACTURE OF GENUINE HYUNDAI PARTS

29.     A variety of suppliers from around the world – but primarily in Korea – manufacture Genuine Hyundai Parts for Hyundai according to HMC's specifications.  These Hyundai parts are used in Hyundai plants in Korea and the United States to manufacture Hyundai vehicles.  The Genuine Hyundai Parts are also intended for use by Hyundai Dealers to service, repair, and perform warranty work on Hyundai vehicles in the United States.

30.     The Genuine Hyundai Parts are designed and tested for optimum safety, performance, and reliability.  In addition, certain Genuine Hyundai Parts intended solely for sale, distribution, and/or use in the United States are specifically designed and manufactured in accordance with and to meet the applicable United States standards and regulations, including environmental and federal motor vehicle safety standards.  The only parts that are Genuine Hyundai Parts, which are covered by the applicable Hyundai warranties, are those that are imported into the United States and sold to authorized Hyundai Dealers through Hyundai's Authorized Chain of Distribution.

31.     The Genuine Hyundai Parts manufactured for use and/or sale in the United States may have material differences from Hyundai parts manufactured for use and/or sale in areas of the world outside the United States.  Furthermore, Hyundai parts that are not sourced through Hyundai's Authorized Chain of Distribution may have physical differences due to such parts being "seconds," rejects, or defective parts ("Non-genuine Hyundai Parts").  Because of these material differences, if a Non-Genuine Hyundai Part is used during the repair or servicing of Hyundai vehicles or as a replacement part for warranty work or otherwise, compatibility, performance, and/or safety issues can arise.

32.     Hyundai Mobis (also known as Mobis Korea or Mobis HQ) is a company within the Hyundai family of companies.  Pursuant to an arrangement with HMC, Hyundai Mobis is responsible for the sourcing of Hyundai parts from third-party manufacturers and for the distribution of those Hyundai parts throughout the world for use on Hyundai automobiles.

33.     Hyundai Mobis has distribution centers throughout the world, including the United States.  However, parts distributed in areas, regions, or countries other than the United States are not intended for distribution to or importation into the United States, and agreements that HMC has with its distributors in such regions outside the United States expressly restrict the sale of these parts to the particular region covered by the agreement and do not permit importation into the United States.

34.     Thus, the only authorized chain of distribution for Genuine Hyundai Parts for the United States is Hyundai's Authorized Chain of Distribution, defined above, from Hyundai Mobis to MPA, which then facilitates the sale of these Genuine Hyundai Parts on behalf of HMA to authorized Hyundai Dealers throughout the United States.

## HMA'S WARRANTY PROGRAM

35.     HMA offers a robust warranty program that includes:  (1) a New Vehicle Limited Warranty; (2) a Powertrain Limited (Original Owner) Warranty; (3) an Anti-Perforation Warranty; and (4) a Replacement Parts and Accessories Limited Warranty.

36.     The New Vehicle Limited Warranty coverage is for 5 years or 60,000 miles, and attaches to automobile purchases and covers a variety of parts incorporated within different Hyundai automobiles.  The Powertrain Limited (Original Owner) Warranty coverage period is 10 years or 100,000 miles to the original vehicle owner and covers the powertrain component.

The Anti-Perforation Warranty coverage period is 7 years and covers rust holes that may develop in vehicle body sheet metal due to defects. Finally, the Replacement Parts and Accessories Limited Warranty provides, for a period of 12 months or 12,000 miles, coverage for repair or replacement of any Hyundai Genuine Part or Accessory supplied from HMA that is found to be defective in material or workmanship under normal use and maintenance.

37.     Moreover, for vehicles within the New Vehicle Limited Warranty coverage period, replacement of certain parts would be covered for 5 years or 60,000 miles under that warranty, which, in effect, "extends" the Replacement Parts and Accessories Limited Warranty coverage period through the remainder of the new vehicle warranty, which can be greater than 12 months or 12,000 miles.

38.     The HMA warranty programs, however, only apply to Genuine Hyundai Parts, which HMA defines in its warranty documents as parts supplied from HMA (through MPA) (i.e., through Hyundai's Authorized Chain of Distribution). Thus, the HMA warranties do not extend to parts sold to its authorized Hyundai Dealers by any other entity other than HMA through Hyundai's Authorized Chain of Distribution.

39.     HMA's warranty program – commonly known and referred to as "America's Best Warranty" – is a critical component in its quality control process and allows HMA to ensure that the value of its trademarks is maintained. The warranty program is also essential to the successful marketing of Hyundai products because it provides assurance to the Hyundai customer that his or her purchase will achieve certain performance standards during the warranty period. HMA has long recognized that the HMA warranty program has substantial value and is an important and necessary part of the automotive goods purchased by its customers. Likewise, HMA's warranties are important and valuable to authorized dealers. The value that the

Case 3:17-cv-00732   Document 1   Filed 12/21/17   Page 12 of 32

warranties add to Hyundai vehicles is the reason HMA assumes the economic cost of the warranty program and promotes and markets the warranty to customers.

40.     Parts manufactured for sale and/or intended for use solely outside of the United States, on the other hand, carry no warranty whatsoever from HMA in the United States.  In addition, any damage to or failure of a Hyundai vehicle caused by the installation or failure of a Non-Genuine Hyundai Part is not and would not be covered by any Hyundai warranty.

41.     Neither HMC nor HMA has authorized the sale to or use by authorized Hyundai Dealers of Hyundai parts that are manufactured for sale and/or intended for use solely outside the United States and not imported by HMA and sold or distributed to authorized Hyundai Dealers through Hyundai's Authorized Chain of Distribution on vehicles in the United States.  Any part that is sourced by anyone outside of Hyundai's Authorized Chain of Distribution is not a Genuine Hyundai Part and is not covered by any warranty offered by Hyundai.

## HYUNDAI'S AGREEMENT WITH ITS DEALERS

42.     Hyundai enters into written agreements with its authorized Dealers in the United States, including the DSSA.  Pursuant to the terms of the DSSA, if a Dealer sells or installs any part or accessory that is **not** a "Hyundai Genuine Part or Accessory," the Dealer must disclose that fact to the customer and advise the customer that the item is not included in the warranties furnished by HMA or HMC.  The sales contract for any such Non-Genuine Hyundai Part must include written notice of such disclosure, and the Dealer must clearly explain to the customer the extent of any warranty covering the equipment, part, or accessories involved, and deliver a copy of the warranty to the customer at the time of sale.  In addition, pursuant to the terms of the DSSA, the Dealer may not represent or offer to sell as "Hyundai Genuine Parts or Accessories," any parts or accessories which are not in fact "Hyundai Genuine Parts or Accessories."

13

43.     The DSSA also provides that although the Dealer has a right to sell, install, or use products which are not "Hyundai Genuine Parts or Accessories," the Dealer shall, in those circumstances, utilize only such other parts and accessories that will not adversely affect the mechanical operation of the Hyundai Motor Vehicle being serviced or repaired, or are equivalent in quality and design to "Hyundai Genuine Parts or Accessories."

44.     Plaintiffs are informed and believe and thereon allege that DTI was and is aware of the DSSA, and through the acts alleged herein, intentionally interfered with Hyundai's contractual relationships with its Dealers.

## DEFENDANT'S INFRINGING AND UNLAWFUL ACTS

45.     Plaintiffs are informed and believe and thereon allege that DTI is using unauthorized chains of supply and distribution to import, distribute, advertise, market, offer for sale, and/or to sell illegal Hyundai grey-market parts, including the Non-Genuine Hyundai Parts that are the subject of this Complaint.

46.     On its website in small print at the bottom of its home page (www.dti-parts.com), DTI makes the following statement:

> DTI Inc. is an independent vendor of parts and does not represent any affiliation with any company, brand, or manufacturer. All parts carry a limited warranty provided by DTI Inc., subject to the terms and conditions of DTI Inc. No other warranty (limited, implied or otherwise) by any company, brand, or manufacturer is implied or accorded by DTI Inc. on products carried or sold by DTI Inc.

47.     On its website, the link to "Warranty and Return Policy" contains the following:



48.     This "limited warranty" that DTI offers is not the equivalent of the Hyundai warranty, and Hyundai is informed and believes and thereon alleges that DTI, through its actions, advertisements, and representations, creates an impression that the Hyundai parts it is offering for sale are Genuine Hyundai Parts, covered by Hyundai's warranties, which creates a likelihood of confusion among Hyundai's Dealers and others, including the general public, regarding the source of DTI's parts and the applicability of Hyundai's warranties to those parts.

49.     Plaintiffs are informed and believe and thereon allege that commencing long after Hyundai's use of the HYUNDAI MARKS, and without Hyundai's consent, and within four years preceding the filing of this Complaint, DTI has and continues to actively and knowingly import, distribute, advertise, promote, offer for sale, and/or sell in the United States replacement automotive parts bearing the HYUNDAI MARKS, which Hyundai did not intend for sale or use in the United States, but rather were intended for sale elsewhere, and which parts contain material physical differences and/or material differences in warranty protection.

15

50.     Plaintiffs are informed and believe and thereon allege that the parts being sold by DTI may not have been subjected to the exacting quality and/or safety standards associated with the Genuine Hyundai Parts and are not equivalent to the Genuine Hyundai Parts in quality and/or design, do not originate with, and/or are not sponsored by Hyundai in the United States, in that these parts were not intended for importation into and sale in the United States, may be seconds, rejects or defective parts, and/or were not sourced from nor imported through Hyundai's Authorized Chain of Distribution.  Hyundai has never imported, promoted, distributed, and/or sold DTI's Hyundai parts into the United States, and has never authorized the importation, promotion, distribution, and/or sale of these parts for sale and/or use in the United States.

51.     The parts being imported and sold by DTI in the United States are not covered under HMA's and/or HMC's warranties, and Defendant's statements in its advertising and its "warranty disclaimer" are false and misleading.

52.     Furthermore, Hyundai is informed and believes and thereon alleges that the parts being sold by DTI may have one or more material physical differences compared to the Genuine Hyundai Parts which are imported by Hyundai through its Authorized Chain of Distribution and which are meant for sale and use in the United States.  Thus, Hyundai cannot guarantee the quality and/or safety of the parts which DTI offers for sale.

53.     As a result of the foregoing, the parts being imported, distributed, advertised, offered for sale, and/or sold by DTI constitute unlawful or illegal "grey-market" goods.

54.     Plaintiffs are informed and believe and thereon allege that on or about July 20, 2107, DTI sold 80 Hyundai Oil filters (Part Number 26300-35504) to an authorized Hyundai dealer in this judicial district (the "DTI Grey-Market Oil Filters").  Thereafter, the authorized Hyundai Dealer shipped the DTI Grey-Market Oil Filters to Hyundai, which Hyundai then

inspected and compared to Genuine Hyundai Oil Filters. As described below, the results of that inspection demonstrated that there are significant material differences between the DTI Grey-Market Oil Filters and the Genuine Hyundai Oil Filters and that the DTI Grey-Market Oil Filters are illegal grey-market parts.

55. Hyundai is informed and believes and thereon alleges that, on or about September 28, 2017, the "New York Sales Representative" for DTI solicited via email the sale of the DTI Non-Genuine Hyundai Parts or illegal Hyundai grey-market parts to an authorized Hyundai Dealer in New Jersey. In that solicitation, DTI stated it was "the premier importer of NEW OEM parts for the Korean manufacturers." In that solicitation, DTI's representative further acknowledged that it was aware of the dealer's "franchise agreement" (i.e., the DSSA).

56. According to a "Price List" for DTI parts being offered for sale in the United States, DTI is offering more than 8,000 parts, all of which Hyundai is informed and believes are imported by DTI through the same unauthorized channels of importation and distribution, which channels are not the Hyundai Authorized Chain of Distribution and thus constitute Non-Genuine Hyundai Parts or illegal Hyundai grey-market parts.

57. Hyundai is informed and thereon alleges that the DTI Grey-Market Oil Filters contain the following material differences when compared to Genuine Hyundai Oil Filters (part number 26300-35504):

    a.    differences in color, material, printing, labeling, and strength of the shipping box;

    b.    the Hyundai Genuine Part's shipping box contains a PDC "yellow" picking label and the DTI Shipping Box does not;

    c.    differences with respect to the parts' labels, including differences in the

"H" logo, the color of the ink, the shading, and the stripes on the boxes for the individual oil filters;

d.      differences in filter material;

e.      differences in the "glue pattern" and perforations on the boxes for the individual oil filters;

f.      differences in the identifying wording and lettering on the individual oil filters, including the "H" logo, the font, spacing of the lettering, and the paint;

g.      differences in the filter element of the individual oil filter, including color differences;

h.      differences in the "stamping" on the individual oil filters;

i.      differences in the date stamps on individual oil filters;

j.      differences in the silicon seal on the individual oil filters;

k.      differences in the "casting stamp" with the Hyundai Genuine Oil Filter having a casting stamp which the DTI oil filter does not; and

l.      differences in the weight of the product.

58.     Hyundai is informed and believes and thereon alleges that DTI is importing, promoting, advertising, distributing, and selling these illegal grey-market Hyundai Parts to Hyundai Dealers, representing that such parts are "Genuine" parts and/or "Hyundai Genuine Accessories" and/or "NEW OEM" parts when they are not. DTI is importing these Non-Genuine Hyundai Parts through unauthorized sources of supply and distribution, and Hyundai is informed and believes and thereon alleges that DTI is aware of Hyundai's Authorized Chain of Distribution.

59.     DTI is promoting, distributing, and selling these non-genuine, illegal grey-market Hyundai Parts to Hyundai Dealers knowing that the Dealers will sell and/or install the Non-Genuine Hyundai Parts even though those parts are not equivalent to Genuine Hyundai Parts in quality and/or design, and/or knowing the Dealers will not advise their customers that the parts are not Genuine Hyundai Parts, and/or are not covered by HMA's and/or HMC's express written warranty for genuine parts sold in the United States, all in breach of the DSSA.  By doing so, DTI is intending to and is disrupting and preventing the Dealers' performance of the DSSA, and/or making the Dealers' performance more expensive or difficult and interfering with Hyundai's contractual relationships with its dealers.

60.     By selling the Non-Genuine Hyundai Parts in the United States, without Hyundai's consent, DTI has deprived Hyundai of its ability to control the quality of its products, and misrepresented to the Dealers and/or consumers the origin and quality of the DTI parts.

61.     DTI has knowingly used in commerce a reproduction, copy, or colorful imitation of the HYUNDAI MARKS in connection with the sale, offering for sale, distribution, and/or advertising of the Non-Genuine Hyundai Parts which use is likely to cause confusion or mistake and/or to deceive the Hyundai Dealers and customers.

62.     DTI has, among other things, knowingly reproduced, copied or colorably imitated Hyundai's rights in the common-law and registered HYUNDAI MARKS and has knowingly applied such reproduction, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive.  The Non-Genuine Hyundai Parts sold by DTI differ materially from the Hyundai Genuine Parts as

Case 3:17-cv-00732   Document 1   Filed 12/21/17   Page 19 of 32

described herein, physically and in warranty coverage or lack thereof, and do not originate with, are not sponsored by and are not distributed by Hyundai, through its Authorized Chain of Distribution.

63. DTI is intentionally and willfully importing, purchasing, promoting, distributing, advertising, offering for sale, and/or selling in the United States, without Hyundai's authorization and/or consent, the Non-Genuine Hyundai Parts to unfairly and fraudulently compete with Hyundai, and to benefit from the valuable and favorable reputation and goodwill of the HYUNDAI MARKS, the Hyundai products, including but not limited to the Genuine Hyundai Parts, and the Hyundai brand.

64. DTI has and continues to use the HYUNDAI MARKS in such a fashion as to intentionally create a false impression among the consuming public that its goods originate from Hyundai or are sponsored, approved by, managed, and/or affiliated with Hyundai, and to misrepresent the origin and quality of goods sold.

65. DTI's acts were and are likely and intended to cause confusion and mistake among the public, customers, prospective customers, creditors, suppliers, dealers, and others and to deceive them as to, among other things, (i) the affiliation, connection, and association of DTI with Hyundai; (ii) the origin, sponsorship, or approval of DTI's goods, services, or commercial activities by Hyundai; and (iii) the nature, characteristics, and quality of Defendant's goods, services, or commercial activities. Defendant's acts were and are for the purpose of enhancing the commercial value of, or selling or soliciting sales of, Defendant's products, goods, or services.

66. By reason of the foregoing, Hyundai has suffered and will continue to suffer damage to its property, business, reputation, and goodwill, and has suffered and will continue to

suffer dilution of the distinctive quality of the HYUNDAI MARKS, and has lost and will continue to lose income and profits that Hyundai would have earned but for Defendant's acts, in an amount in excess of the jurisdictional threshold of this Court.

67.     The acts of DTI alleged herein are knowing, intentional, willful, and extraordinary.

68.     Hyundai's remedy at law is inadequate to compensate Hyundai fully for the injuries it is suffering.  Defendant is continuing the foregoing activities and, unless enjoined, will continue to do so, all to Hyundai's irreparable damage.  It would be extremely difficult or impossible to estimate the amount of compensation which would afford Hyundai complete monetary relief for such continuing acts, and a multiplicity of judicial proceedings would be required in the absence of appropriate injunctive relief.

## FIRST CAUSE OF ACTION
## FOR TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

69.     Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 68 above.

70.     DTI's importation, promotion, advertisement, distribution, use, and/or threatened continued use in commerce of the non-genuine, illegal grey-market Hyundai Parts which bear trademarks that are identical or nearly identical to the federally registered HYUNDAI MARKS constitute wrongful use of an unauthorized reproduction, copy, or colorable imitation of one or more of the registered HYUNDAI MARKS.

71.     DTI's importation, promotion, and distribution of the non-genuine, illegal grey-market Hyundai Parts have caused and/or are likely to continue to cause confusion, or to cause mistake, or to deceive, including but not limited to whether Hyundai guarantees and/or warrants the quality of the non-genuine, illegal grey-market Hyundai Parts.

72.     DTI's willful acts are intended to reap the benefit of Hyundai's reputation and goodwill that they have created in its HYUNDAI MARKS, and constitutes infringement of the federally registered trademarks, which HMA and/or HMC own and/or exclusively license, in violation of Sections 32, 34, and 35 of the Lanham Act (15 U.S.C. §§ 1114, 1116, and 1117).

73.     As a direct and proximate result of DTI's illegal and willful activities, Hyundai has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount that exceeds the jurisdictional minimum of this Court.

74.     DTI's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai, including its business, reputation, and goodwill, and will continue to damage Hyundai and deceive the public unless enjoined by this Court, and Hyundai has no adequate remedy at law.

75.     DTI's infringement of the HYUNDAI MARKS is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of Section 35 of the Lanham Act (15 U.S.C. § 1117).  Hyundai is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## SECOND CAUSE OF ACTION
## FOR FALSE DESIGNATION OF ORIGIN
### (15 U.S.C.§ 1125(a)(1)(A))

76.     Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 75, above.

77.     DTI's use and threatened continued use in connection with importing, selling, offering for sale, advertising, marketing, promoting, and packaging the Non-Genuine Hyundai

Parts bearing the HYUNDAI MARKS and/or marks which are identical or nearly identical to the HYUNDAI MARKS and trade names, trade dress, wrappers, packaging and words, terms, names, symbols, and/or devices that suggest that DTI's goods originated with, were manufactured by, or are sponsored by Hyundai constitute a false designation of origin and a false description and representation of DTI's business and products.  DTI's acts and each of them are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of DTI with Hyundai, or as to the origin, sponsorship, or approval of DTI's goods, services, or commercial activities by Hyundai.

78.     The aforesaid wrongful acts of DTI constitute the use of a false designation of origin and false description of representation, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

79.     As a direct and proximate result of DTI's illegal activities, Hyundai has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional minimum of this Court.

80.     DTI's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai, including its business, reputation, and goodwill, and will continue to damage Hyundai and deceive the public unless enjoined by this Court, and Hyundai has no adequate remedy at law.

81.     DTI's use of the HYUNDAI MARKS is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of Section 35 of the Lanham Act (15 U.S.C. § 1117).  Hyundai is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## THIRD CAUSE OF ACTION
## FOR FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a)(1)(B))

82.    Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 81 above.

83.    DTI's use and threatened continued use in connection with importing, selling, offering for sale, commercial advertising, marketing, promoting, and packaging Non-Genuine Hyundai Parts bearing the HYUNDAI MARKS and/or marks which are identical or nearly identical to the HYUNDAI MARKS and trade names, trade dress, wrappers, packaging and words, terms, names, symbols, and/or devices that suggest that DTI's goods originated with, were manufactured by, or are sponsored by Hyundai constitutes a false designation of origin and a false description and representation of DTI's business and products.  DTI's acts and each of them are likely to cause confusion, or to cause mistake, or to deceive as to nature, characteristics, qualities, and/or geographic origin of DTI's goods, services, or commercial activities by Hyundai.

84.    The aforesaid wrongful acts of DTI constitute the use of a false designation of origin and false description of representation, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B).

85.    As a direct and proximate result of DTI's illegal activities, Hyundai has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional minimum of this Court.

86.    DTI's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai and will continue to damage Hyundai and deceive the public unless enjoined by this Court and Hyundai has no adequate remedy at law.

87.     DTI's use of the HYUNDAI MARKS is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of Section 35 of the Lanham Act (15 U.S.C. § 1117).  Hyundai is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## FOURTH CAUSE OF ACTION
## FOR TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

88.     Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 87 above.

89.     The HYUNDAI MARKS have been and continue to be "famous" as defined by 15 U.S.C. § 1125(c)(1) due to their continued and extensive use in advertising and marketing. The HYUNDAI MARKS were famous well before DTI imported, distributed, offered for sale, or sold the Non-Genuine Hyundai Parts.

90.     DTI's use and threatened continued use of marks which are identical or nearly identical to the HYUNDAI MARKS, through the unauthorized importation, promotion, distribution, and/or sale of non-genuine illegal grey-market Hyundai parts that do not comply with Hyundai's quality and/or safety control policies has and will continue to tarnish Hyundai's reputation and dilute and injure the value of the HYUNDAI MARKS as indicators of high quality goods that consumers expect from Hyundai, and is done in willful violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

91.     As a direct and proximate result of DTI's illegal activities, Hyundai has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional minimum of this Court.

92.     DTI's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai, including its business, reputation, and goodwill, and will continue to damage Hyundai and deceive the public unless enjoined by this Court, and Hyundai has no adequate remedy at law.

93.     DTI's dilution of the HYUNDAI MARKS is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of Section 35 of the Lanham Act (15 U.S.C. § 1117).  Hyundai is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## FOURTH CAUSE OF ACTION
## FOR COMMON LAW UNFAIR COMPETITION

94.     Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 93 above.

95.     Hyundai is informed and believes and thereon alleges that DTI has engaged in and continues to engage in unfair competition by using the HYUNDAI MARKS, with the intention of interfering with and trading on the business reputation and goodwill engendered by Hyundai through hard work and diligent effort, and "passing off" its goods as those of another, namely Hyundai.

96.     DTI's acts have caused Hyundai competitive injury, as described herein, and specifically have caused Hyundai to incur damages in an amount to be proved at trial consisting of among other things, diminution in the value of and goodwill associated with the HYUNDAI MARKS.

97.     DTI's acts as alleged above, and specifically, without limitation, use of the

HYUNDAI MARKS, if not enjoined, will continue. Hyundai has no adequate remedy at law.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### (On Behalf of HMA Only)

98.     HMA hereby re-alleges the allegations set forth in Paragraphs 1 through 97 above.

99.     As alleged herein, HMA and its Dealers, including dealers in this Judicial District, entered into the DSSA, which is an enforceable contract.

100.    HMA is informed and believes and thereon alleges that DTI was and is aware of these contractual relationships and/or should have been aware of them, at all relevant times.

101.    As alleged herein, DTI intended to and did in fact disrupt these contractual relationship between HMA and its Hyundai Dealers.

102.    DTI's wrongful and intentional conduct, as alleged in detail above, prevented the performance of the Dealers under their agreements with HMA, made performance more expensive and/or difficult, and/or resulted in economic loss to HMA.

103.    As a direct and proximate result of DTI's wrongful and/or intentional conduct, the agreements between HMA and its Dealers were not performed and HMA has suffered and will suffer damages including but not limited to lost profits and lost business opportunities, and loss of business reputation and goodwill, in an amount to be determined at trial.

104.    In committing the acts alleged above, DTI acted intentionally and has been guilty of oppression, fraud, and/or malice, and acted in conscious and reckless disregard of the rights of HMA, entitling HMA to punitive damages in an amount to be established at trial.

WHEREFORE, HMA seeks judgment as set forth herein.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

105.    Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 104 above.

106.    DTI's activities, including unlawfully importing, purchasing, promoting, distributing, advertising, offering for sale, and/or selling in the United States Non-Genuine Hyundai Parts, without Hyundai's authorization and/or consent, constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA").

107.    In addition, DTI's unauthorized use of the marks which incorporate and are confusingly similar to the HYUNDAI MARKS has caused and/or is likely to cause confusion among consumers, and/or has diluted and/or will continue to dilute the HYUNDAI MARKS.

108.    Moreover, DTI's conduct was intended to and did cause and continues to cause disruption in the performance of the contractual relationship between HMA and its Dealers under the DSSA to the detriment of HMA and further disrupted Hyundai's Authorized Chain of Distribution to the detriment of HMA.

109.    DTI's activities are calculated to deceive the public and thus constitute an unfair and deceptive business practice.

110.    As a direct and proximate result of DTI's unlawful, unfair, and fraudulent business practices, DTI collected revenues and/or realized profits to which they were not entitled.

111.    Hyundai suffered actual losses as a result of DTI's unlawful, unfair, and fraudulent business practices, and Hyundai seeks restitution and disgorgement of the revenues collected and/or profits realized by DTI as a result of its illegal, unfair, and/or deceptive business and advertising practices.

28

112. Pursuant to N.C. Gen. Stat. § 75-1.1, Hyundai further seeks an order of this Court enjoining DTI from continuing its wrongful business practices. Unless restrained by this Court, DTI will continue to engage in illegal, unfair, false, and misleading business practices, as alleged above, in violation of the UDTPA. Hyundai and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted. Hyundai is therefore entitled to preliminary and permanent injunctions.

113. Hyundai has no adequate remedy at law for the injury alleged in this cause of action, and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

114. In addition to injunctive relief, disgorgement, and restitution, Hyundai is also entitled to all other remedies provided under N.C. Gen. Stat. § 75-1.1, including trebling of actual damages under N.C. Gen. Stat. § 75-16.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## PRAYER FOR RELIEF

1. That this Court temporarily, preliminarily, and permanently enjoin and restrain DTI, its officers, directors, servants, employees, attorneys, agents, representatives, and distributors, and all other persons acting in concert or participation with DTI from:

  a. misrepresenting in any way the source of origin or the nature or quality of DTI's Non-Genuine Hyundai Parts;

  b. making, manufacturing, importing, using, distributing, shipping, licensing, selling, developing, displaying, delivering, advertising and/or otherwise marketing, or disposing of DTI's Non-Genuine Hyundai Parts;

  c. disposing of, destroying, moving, relocating, or transferring any and all of

DTI's Non-Genuine Hyundai Parts, as well as packaging and other items including advertising, promotion, drawings, transfers, brochures, catalogs, stationery, business forms, business cards, labels, stickers, etc. relating to DTI's Non-Genuine Hyundai Parts;

d.    disposing of, destroying, moving, relocating, or transferring any means for making labels, stickers, packages, discs, or other items relating to DTI's Non-Genuine Hyundai Parts, or any packaging, discs, labels, stickers, stationery, business forms, and business cards relating to DTI's infringing goods or markings, including artwork, screen-printing plates, dies, matrices, decals, and any other equipment; and

e.    disposing of, destroying, moving, relocating, or transferring any documents pertaining to the importation, sale, receipt, promotion, advertising, distribution, and/or shipment of DTI's Non-Genuine Hyundai Parts.

2.    That this Court order DTI or any of its agents or affiliates to recall any and all products and materials bearing, copying, reproducing, counterfeiting, or simulating the HYUNDAI MARKS or a colorable imitation thereof;

3.    That this Court order DTI to file with this Court and serve upon Hyundai within 30 days of being served with this Court's injunction issued in this action, a written affidavit signed by DTI under oath, setting forth in detail the manner in which DTI complied with the injunction;

4.    That this Court issue an order directing U.S. Customs and Border Protection to refuse entry to the United States of automobile parts or accessories bearing the HYUNDAI

MARKS by or to DTI or any of its affiliates, agents, or related entities pursuant to 15 U.S.C. § 1125(b) and/or as otherwise provided by law;

5.      That this Court preliminarily and permanently enjoin DTI from further conduct which infringes the HYUNDAI MARKS;

6.      That this Court award Hyundai compensatory damages, including but not limited to its actual damages, DTI's profits, and costs pursuant to 15 U.S.C. § 1117(a) and/or as otherwise provided by law;

7.      That this Court award Hyundai enhanced and/or treble damages pursuant to 15 U.S.C. § 1117(a), and/or as otherwise provided by law;

8.      That this Court award Plaintiffs their attorney's fees, pursuant to 15 U.S.C. § 1117(a);

9.      That this Court award Hyundai punitive damages as provided by law;

10.     That this Court award Hyundai restitution as provided by law;

11.     That this Court order DTI to account to Hyundai for all profits from its infringement of HYUNDAI MARKS;

12.     That this Court award Hyundai their costs, disbursements, and attorneys' fees incurred in bringing this action;

13.     That this Court award Hyundai prejudgment interest as provided by law; and

14.     That this Court award Hyundai such other and further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Hyundai hereby demands trial by jury in this action on any issue triable of right by a jury.

Respectfully submitted on December 21, 2017.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Hayden J. Silver, III
Hayden J. Silver, III (N.C. Bar No. 10037)
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2188
Email: Jay.Silver@wbd-us.com

James S. Derrick (N.C. Bar No. 39632)
One Wells Fargo Center
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4913
Email: James.Derrick@wbd-us.com

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Kenneth E. Keller (CA Bar No. 71450)*
Four Embarcadero Center, 22n Floor
San Francisco, California 94118
Telephone: (415) 983-1053
Email: kenneth.keller@pillsburylaw.com

**HYUNDAI MOTOR AMERICA, INC.**

Jason R. Erb (CA Bar No. 180962)*
10550 Talbert Avenue
Fountain Valley, California 92708
Telephone: (714) 965-3393
Email: jerb@hmausa.com

*Counsel for Plaintiffs Hyundai Motor America, Inc. and Hyundai Motor Company*

\* Motions for admission *pro hac vice* to be filed.