IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| HYUNDAI MOTOR AMERICA, INC. and HYUNDAI MOTOR COMPANY, <br><br>　　　　Plaintiffs, <br><br>　vs. <br><br>DIRECT TECHNOLOGIES INTERNATIONAL, INC. d/b/a DTI, INC., <br><br>　　　　Defendant. | Civil Action No. 3:17-cv-732 <br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT DIRECT TECHNOLOGIES INTERNATIONAL, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

In opposition to Defendant Direct Technologies International, Inc.'s ("DTI") Motion to Dismiss [DE 19], Plaintiffs Hyundai Motor America, Inc. ("Hyundai USA") and Hyundai Motor Company ("Hyundai International") (collectively "Hyundai") ask this Court to: (1) ignore Fourth Circuit and Supreme Court authority on the issue of legally imported "genuine" goods; and (2) adopt a *per se* "material differences" rule of confusion that has not been adopted by the Fourth Circuit, or *any* district court in North Carolina, and is diametrically opposed to controlling Fourth Circuit law. Hyundai tacitly admits that all of its eggs are in the inapplicable "material differences" basket and that Hyundai has not pled any other facts supporting a likelihood of confusion sufficient to state a cause of action for *any* Lanham Act claim or parallel state law claim. In fact, the Complaint alleges that DTI goes out of its way to dispel any confusion by DTI's purchasers with notices on its website. Finally, Hyundai is unable to point to any

allegation in its Complaint (there is none) which plausibly supports a claim that DTI *intentionally induced* its customers to breach the agreement with Hyundai. Intentional inducement is a critical element in any claim for intentional interference under state law and it is absent from the Complaint.

Accordingly, the Court should dismiss all of Hyundai's claims with prejudice.[1] There can be no cause of action under the Lanham Act or North Carolina law in a *K Mart* "case 2a" where the trademark owner maintains 100% control over the branding, the manufacturing, and, importantly, the quality of the products to which the trademarks are applied.

I. **Fourth Circuit Law Requires that the Lanham Act and Parallel State Law Claims be Dismissed**

Nowhere in its opposition does Hyundai grapple with the Fourth Circuit's statement of law that controls here:

> As a general rule, **trademark law does not apply to the sale of genuine goods bearing a true mark**, even if the sale is without the mark owner's consent. *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir.), *cert. denied*, 484 U.S. 851 (1987). Therefore, we must decide whether Commercial sold a "genuine" product under Shell marks in order to determine whether trademark law applies.
>
> A product is not truly "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer. *El Greco Leather Products Co. v. Shoe World*, 806 F.2d 392, 395 (2d Cir.1986), *cert. denied*, 484 U.S. 817 (1987). The Lanham Trademark Act affords the trademark holder the right to control the quality of the goods manufactured and sold under its trademark. *Id*. "**[T]he actual quality of the goods is irrelevant**; **it is the control of quality that a trademark holder is entitled to maintain.**" *Id*.

*Shell Oil Co. v. Com. Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (emphasis added) (alterations in original). The Fourth Circuit's holding in *Shell Oil* is directly on point and the

---

[1] DTI notes that Hyundai failed to provide a certificate of service with the filing of its Opposition, in violation of LCvR 5.3(c). [DE 23 at 23]. This represents an additional basis for dismissal.

Fourth Circuit has continued to apply the *Shell Oil* holding twenty years later. *See, e.g., Georgia P. Consumer Products, LP v. Von Drehle Corp.*, 618 F.3d 441, 455 (4th Cir. 2010) (quoting *Shell Oil* for the proposition that "the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain.").

Just as clearly, Hyundai never confronts the *unanimous* opinion of the Supreme Court with respect to "case 2a" gray market importation. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 286 (1988) (discussing gray market importation in "case 1", "case 2a", "case 2b", "case 2c", and "case 3").[2] Instead, Hyundai wrongly states that so-called "abundant [lower court] post-*K Mart* case law" reaches a different conclusion than *K Mart*. [DE 23 at 3]. In support of this brazen (and incorrect) statement that lower courts have somehow circumvented the Supreme Court with respect to "case 2a" gray market cases, Hyundai cites to a list of circuit court cases which it states "ostensibly should have come out differently under *K Mart*." *Id*. at 12. Unfortunately for Hyundai, the circuit court cases it cites in section II.B.1.b (page 6) of its opposition are are in fact entirely *consistent* with *K Mart*.

In particular, *Iberia Foods*[3] and *Societe Des Produits*[4] are both *K Mart* "case 1" type cases where the domestic trademark licensee/registrant was *not* affiliated with the foreign trademark owner (and thus lacked control over the quality). *Bourdeau Bros*.[5] and *R.J. Reynolds*[6] are both *K Mart* "case 3" type cases where a US entity owned the trademark but licensed foreign distribution rights to an *unaffiliated* foreign entity (and thus lacked control over the quality). *Zino*

---

[2] Though *K Mart* was a fractured opinion, Justice Kennedy writing for the majority and Justice Brennan writing in concurrence both point out that "All Members of the Court agree[d]" that a "case 2a" gray market importation was not proscribed conduct. 486 U.S. at 292, 302.
[3] *Iberia Foods Corp. v. Romeo*, 150 F.3d 298 (3d Cir. 1998).
[4] *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633 (1st Cir. 1992).
[5] *Bourdeau Bros., Inc. v. Intl. Trade Commn.*, 444 F.3d 1317 (Fed. Cir. 2006).
[6] *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690 (7th Cir. 2006).

3

*Davidoff*,[7] *Brilliance Audio*,[8] and *Beltronics*[9] all involved additional malicious conduct by the accused infringer including repackaging, relabeling, and removing UPC codes and serial numbers (and thus any control over quality was, as in *Shell Oil*, subverted by additional acts of the gray market importer) – not simply stocking and reselling the products *exactly* as *first* sold by the trademark owner/manufacturer/plaintiff. *Sebastian Intern., Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) ("a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act"); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1237 (10th Cir. 2006) (same). None of the cases cited by Hyundai are K Mart "case 2a" type cases such as this.

In contrast, the present case is indisputably a *K Mart* "case 2a" gray market case – a fact made plain in the Complaint and which Hyundai does not dispute in its opposition. Here, Hyundai International is the trademark owner [DE 1-1], Hyundai USA is its US subsidiary [DE 3], and Hyundai Mobis is its worldwide manufacturer. [DE 2]. Critically, the Complaint alleges, and Hyundai confirms in its Opposition, that Hyundai International has 100% **control** over the quality of the goods to which it affixes its trademarks – a fact made plain in the Complaint and which Hyundai does not dispute in its opposition.

Accepting all allegations in the Complaint as true, and applying *Shell Oil*, the goods at issue are "genuine" because they are "manufactured and distributed under quality controls established by the manufacturer." 928 F.2d at 107. The Complaint does not allege that DTI repackaged, relabeled, removed UPC codes or serial numbers, or interfered in any way with the products named in the complaint. In fact, the Complaint expressly states Hyundai applies the

---

[7] *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009).
[8] *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 370 (6th Cir. 2007).
[9] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009).

same part numbers – "Part Number 26300-35504" – to the alleged gray market oil filters as it does to its other oil filters. *See* [DE 1 at 16, ¶54]; [DE 1 at 5-6, ¶15].[10] In the cases cited by Hyundai, the defendants removed numbering indicia. No such allegation is present here. Any alleged "material differences" are solely attributable to Hyundai itself, which had complete control over quality. The products are sold in precisely the condition that Hyundai intended.

Nonetheless, Hyundai chides DTI for "not even mention[ing] the uniformly-applied material differences test…." [DE 23 at 11]. Hyundai fails to grasp that, pursuant to *K Mart* and *Shell Oil*, the material differences test is inapplicable to the facts of this gray market "case 2a." Simply put, "trademark law does not apply to the sale of genuine goods bearing a true mark" nor does it apply where the trademark owner maintained "control of quality" of the accused products. Any "material differences" are solely the responsibility of Hyundai. This case must be dismissed because Hyundai has failed to state a claim for relief under the Lanham Act or parallel state law. *Id*.

## II. The Complaint Fails to Plausibly Allege Confusion and Should be Dismissed for this Reason Also

Likelihood of confusion has been described as the "touchstone", the "*sine qua non*", and "hallmark" of trademark infringement. *See, e.g.*, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) (affirming dismissal of Lanham Act claims for failure to allege confusion and stating that "[t]he touchstone of liability [for trademark infringement] is whether the

---

[10] Not to be lost is the fact that the single part number stated in the Complaint is an "oil filter." [DE 1 at 5]. In its opposition, Hyundai opines that "harm is even more pronounced in the automotive industry, where safety and uniformity of product are paramount." [DE 23 at 2]. Besides the fact that such an allegation regarding "safety" is not in the Complaint, Hyundai has not alleged that DTI is selling air bags or seat belts. Hyundai is alleging that DTI is selling oil filters made by Hyundai and having identical part numbers applied by Hyundai. The Complaint does not allege any "safety" or "uniformity" issues and, accordingly, Hyundai's arguments should be disregarded with respect to the Motion to Dismiss.

5

defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods"); *Coca-Cola N.A. v. Crawley Juice, Inc.*, 2011 WL 1882845, at *7 (E.D.N.Y. May 17, 2011) (dismissing Lanham Act counterclaims and explaining that the "*sine qua non*" of an unfair competition action is the likelihood of confusion between the plaintiff's and defendant's products"); *Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 539 (D. Vt. 2001) (dismissing Lanham Act claims and holding that "consumer confusion is hallmark of any trademark infringement claim"). The Fourth Circuit is in accord: "'[l]iability under the Lanham Act for trademark infringement is predicated on use of a registered trademark that 'is likely to cause confusion.'" *Shell Oil*, 928 F.2d at 108 (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied*, 450 U.S. 981 (1981)). If a Lanham Act plaintiff fails to plausibly allege likelihood of confusion, it has failed to state a claim for relief.

Here, Hyundai's claims of confusion reside solely in its "material differences" allegations. As discussed *supra*, any "material differences" are squarely in the control of Hyundai and, therefore, are not applicable to the facts of this case. Hyundai maintains at all times 100% control over the quality of the products – nothing in the Complaint or opposition says otherwise. Hyundai does not allege any confusion apart from the so-called "material differences" and, as such, under Fourth Circuit law the Lanham Act analysis ends here – Hyundai has failed to state a claim.

However, assuming arguendo that the material differences analysis would apply to the facts alleged in the Complaint, Hyundai argues in its opposition that this Court should adopt a *per se* "material differences" rule of confusion whereby if two products have "material differences" there is, *per se* confusion, regardless of any other allegations in the Complaint. [DE 23 at 2]. Hyundai's suggestion for this Court goes too far. Even in the circuits that have adopted

6

a "material differences" rule for cases where a trademark owner does *not* maintain 100% control over the goods (such as in *K Mart* case 1 or case 3), any "material difference" in the goods is but one aspect of the confusion analysis. In a case cited by Hyundai in its opposition, the Tenth Circuit explains as follows:

> The purpose of the material difference test is to assist courts in determining whether allegedly infringing products are likely to cause confusion in the marketplace and undermine the goodwill the trademark owner has developed in its trademarked goods. **So long as resellers of materially different products take the necessary steps to adequately alleviate this confusion and prevent injury to the trademark's goodwill—by, for example, sufficiently disclosing that the product differs from the originally sold product—those differences will be unlikely to trigger the liability Midwest envisions**.

*Beltronics*, 562 F.3d at 1074 (emphasis added) (internal citations omitted). Here, in the Complaint Hyundai includes screenshots from DTI's webpage which specifically disclaim any connection with Hyundai. *See* [DE 1 at 46 and 47]. One of DTI's screen shots shown in the Complaint provides:

> DTI Inc. is an independent vendor of parts and does not represent any affiliation with any company, brand, or manufacturer. All parts carry a limited warranty provided by DTI Inc., subject to the terms and conditions of DTI Inc. No other warranty (limited, implied or otherwise) by any company, brand, or manufacturer is implied or accorded by DTI Inc. on products carried or sold by DTI Inc.

*Id*. In view of this disclaimer, which is contained within the four corners of Hyundai's Complaint, Hyundai has alleged that DTI's customers are informed of the gray market nature of the goods – including the warranties provided thereunder – and cannot be "confused." The Fifth Circuit, applying gray market laws to similar facts, found the lack of potential for confusion to be critical: "The critical element that is missing from [plaintiff]'s argument and from the facts of this case, however, is the element of consumer confusion.… We decline to expand the reach of the Lanham Act in a way that makes [plaintiff]'s complaint actionable thereunder." *Matrix*

7

*Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 591 (5th Cir. 1993). This Court should do no different.

### III. The Complaint Fails to Allege Intentional Inducement Not to Perform the Contract

In its opposition, Hyundai does not point to any allegation in its Complaint that would save its fatally deficient claim for intentional interference with contractual relations. In addition to other elements, Hyundai was required to plead that "(3) the defendant intentionally induces the third person not to perform the contract…." *United Laboratories, Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988) (citing *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954)) (emphasis added). Hyundai failed to do so. Likewise, Hyundai fails to even attempt to distinguish the Seventh Circuit's *R.E. Davis* decision, cited in DTI's motion, which affirmed dismissal of a claim of intentional interference with contractual relations on facts parallel those in this case. *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir. 1987).[11]

Hyundai alleges in the Complaint that its contract with its dealers *does not prevent the dealers from purchasing gray market goods*. Instead, the contract states that if a part installed by the dealers "is not a 'Hyundai Genuine Part or Accessory,' the Dealer must disclose that fact to the customer and advise the customer that the item is not included in the warranties furnished by HMA or HMC." Hyundai specifically alleges that DTI goes out of its way to inform the dealers of the gray market nature of the parts – parts which Hyundai's contract *permits* the dealers to purchase. Hyundai does not plausibly allege that DTI **intentionally induced** a breach of the alleged agreement. The claim must be dismissed.

---

[11] The elements of the Intentional Interference at issue in *R.E. Davis* closely parallel the elements in North Carolina at issue here.

8

## IV. Trademark Law does not Offer Hyundai a Vehicle for Establishing Worldwide Discriminatory Pricing Scheme

Finally, taking a step back and reviewing the Complaint at a more global level, Hyundai's motives are readily apparent. Hyundai is attempting to use the trademark and unfair competition laws of the United States to establish a worldwide discriminatory pricing scheme. This surely turns the term "unfair competition" as well as established trademark jurisprudence on its head and numerous courts have cautioned against such misuse of trademark law. *Prestonettes, Inc., v. Coty*, 264 U.S. 359 (1924); *Weil Ceramics and Glass, Inc. v. Dash*, 878 F.2d 659 (3d Cir. 1989) ("In this case, however, for all intents and purposes, the trademark holder and the manufacturer are the same and there is no reason that compels us to read anything in the language of the act and extend further the protections of the trademark act to this circumstance."); *NEC Elecs. v. CAL Cir. Abco*, 810 F.2d 1506, (9th Cir. 1987) ("This country's trademark law does not offer NEC–Japan a vehicle for establishing a worldwide discriminatory pricing scheme simply through the expedient of setting up an American subsidiary with nominal title to its mark."), *cert. denied*, 484 U.S. 851 (1987).

Hyundai Complaint alleges that Hyundai International has complete and total control over the quality of its products. Hyundai states in its opposition that Hyundai's "foreign distributors (also known as dealers in some regions) are contractually prohibited from selling Hyundai parts outside of their specifically authorized foreign territory and specifically prohibited from reselling those parts to the United States." [DE 23 at 2-3]. If this is true, Hyundai may well have a breach of contract action against those "foreign distributors." Hyundai does not have a cognizable trademark claim against DTI.

Likewise, Hyundai alleges that it has a contract with its US dealers that requires the dealers to inform customers of gray market parts. Hyundai attempts to apply the inapplicable tort

9

of Intentional Interference with Contractual Relations to the alleged facts. It may be the case that Hyundai has a breach of contract action against its dealers. Hyundai does not have a cognizable claim under North Carolina law against DTI.

## V. Conclusion

For all of the above reasons, Hyundai has failed to state any cognizable claim upon which relief from this Court can be granted. Pursuant to Rule 12(b)(6), the Complaint should be dismissed with prejudice in its entirety.

This the 26th day of April, 2018.

Respectfully submitted,

s/ Samuel A. Long, Jr.
W. Thad Adams, III (N.C. Bar No. 000020)
Samuel A. Long, Jr. (N.C. Bar No. 46588)
Kathryn A. Gromlovits (N.C. Bar No. 32700)
Christina Davidson Trimmer (N.C. Bar No. 44857)
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, North Carolina 28280-0002
Tel:    (704) 375-0057
Fax:    (704) 332-1197
Email: tadams@slk-law.com
           along@slk-law.com
           kgromlovits@slk-law.com
           ctrimmer@slk-law.com

## CERTIFICATE OF SERVICE

      I hereby certify that on April 26, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically and electronically notify all counsel of record in this case.

                                                s/ Samuel A. Long, Jr.
                                                Samuel A. Long, Jr. (N.C. Bar No. 46588)
                                                SHUMAKER, LOOP & KENDRICK, LLP
                                                101 South Tryon Street, Suite 2200
                                                Charlotte, NC  28280-0002
                                                Tel:    (704) 375-0057
                                                Fax:    (704) 332-1197
                                                Email: along@slk-law.com

11

Case 3:17-cv-00732-MOC-DSC   Document 28   Filed 04/26/18   Page 11 of 11