IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No.: 3:17-cv-00732-MOC-DSC

HYUNDAI MOTOR AMERICA, INC. and
HYUNDAI MOTOR COMPANY,

    Plaintiffs and Counterdefendants,

vs.

DIRECT TECHNOLOGIES
INTERNATIONAL, INC. d/b/a DTI, INC.,

    Defendant and Counterclaimant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY ITC
INVESTIGATION AND FOR PRELIMINARY INJUNCTION**

Defendant Direct Technologies International, Inc. ("DTI") asks this Court to order literally unprecedented relief in direct contravention of the statutory scheme erected by Congress when it enacted Section 337 of the Tariff Act of 1930. Although DTI claims that an All Writs Act injunction is necessary to preserve this Court's jurisdiction in view of a parallel U.S. International Trade Commission ("ITC") investigation, the Fourth Circuit long ago rejected that argument when it held that "Congress has created two separate jurisdictions" for ITC and district court proceedings. *Ashlow Ltd. v. Morgan Construction Co.*, 672 F.2d 371, 375 (4th Cir. 1982). Plaintiffs Hyundai Motor America, Inc. and Hyundai Motor Company (together, "Hyundai") submit that this precedent requires that DTI's emergency motion (Doc. Nos. 52-53) be denied.

**I.    INTRODUCTION**

Congress authorized and anticipated parallel proceedings in the district courts and the ITC, as the district court and the ITC provide different remedies. Indeed, Hyundai seeks different relief in the ITC proceeding (an exclusion order) which it cannot obtain in this action.

1

If DTI does not want to participate in this action and the ITC investigation in parallel, Congress has provided DTI (as well as any other ITC respondent involved in parallel litigation) with the option of requesting a ***mandatory*** stay of the district court proceedings. *See* 28 U.S.C. § 1659. However, whether it seeks that stay or not, Congress has not provided for, and DTI is not entitled to, an order halting the ITC investigation or enjoining Hyundai from participating in it.

While DTI complains that Hyundai is forum shopping, some ten months after initiating this litigation, in October 2018, Hyundai was advised for the first time by the Customs and Border Patrol ("CBP") that CBP does not recognize and would not enforce an exclusion order Hyundai had obtained from the District of Nevada in a trademark infringement action. *See generally* Declaration of David Goodloe ("Goodloe Decl.") submitted herewith and discussed further below. To the contrary, according to the CBP, it believed it could only enforce an exclusion order obtained from the ITC.

Nor is there any "emergency" here that warrants issuance of an injunction. DTI's motion is notably devoid of any evidence demonstrating exigent circumstances that would support an injunction. DTI has been on notice of the ITC's intent to investigate its unlawful and unfair trade practices for more than a month, since the ITC published notice of the investigation in the Federal Register on May 9, 2019. In fact, DTI submitted comments to the ITC regarding the proposed investigation on May 17, 2019, is now participating in the investigation, and has served discovery on Hyundai. There is no basis in fact or in law for the relief sought by DTI, on an emergency basis or otherwise.

## II. BACKGROUND

### A. SUMMARY OF THIS LITIGATION

Hyundai filed its Complaint in this Court in December 2017. (Doc. No. 1.) After the court denied DTI's motion to dismiss, DTI filed its Answer and Counterclaims over a year ago,

2

in May 2018. (Doc. No. 33.) The Court denied Hyundai's motion to dismiss those counterclaims in August 2018 (Doc. No. 44) and Hyundai answered in October 2018. (Doc. No. 47.) DTI's counterclaims remain pending, and DTI is now and has always been free to litigate them in this Court.

### B. THE ITC'S SEPARATE STATUTORY SCHEME

The ITC was enacted to investigate violations of the trade statute enumerated in Section 337 of the Tariff Act of 1930, as amended. Section 337 is separate from both the Lanham Act and the Patent Act. *See Kinik Co. v. U.S. Int'l Trade Comm'n.*, 362 F.3d 1359, 1363 (Fed. Cir. 2004) ("We affirm the Commission's ruling that the defenses established in § 271(g) [of the Patent Act] are not available in § 1337(a)(1)(B)(ii) actions."); *see also Lannom Mfg. Co., Inc. v. U.S. Int'l. Trade Comm'n*, 799 F. 2d 1572, 1576-78 (Fed. Cir. 1986). Congress authorized the ITC to investigate unlawful "importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that infringe a valid and enforceable United States trademark registered under the Trademark Act of 1946." 19 U.S.C. § 1337(a)(1)(C). If the ITC determines that there has been a violation of the trade statute, then the ITC may issue orders excluding the infringing articles from importation into the United States and prohibiting domestic activities related to the sale, marketing, advertising, and distribution of infringing articles already within the United States. *Id*. § 1337 (d) & (f).

### C. THE ITC PROCEEDING

On May 3, 2019, Hyundai submitted a complaint to the ITC requesting that the ITC investigate DTI's and three of its foreign suppliers' unlawful importation and sale after importation of gray market replacement automotive service and collision parts and components in violation of Section 337. Declaration of Kenneth E. Keller in Opposition to DTI's Emergency

3

Motion for Preliminary Injunction ("Keller Decl."), Exh. A.  In addition to DTI, Hyundai identified three foreign entities believed to have violated Section 337.  *Id*. at 4-6.  Hyundai requested that the ITC issue cease-and-desist orders and a limited exclusion order directed at those gray market parts and components that the ITC determines are infringing.  *Id.* at 33-34.

On May 9, 2019, notice that Hyundai's Complaint had been received by the ITC was published in the Federal Register.  Keller Decl., Exh. B.  Eight days later, on May 17, DTI submitted comments to the ITC in which DTI presented its antitrust and anti-competitive arguments and requested that the ITC either (1) refuse to institute an investigation or (2) have the Administrative Law Judge determine that the alleged anti-competitive acts were in the public interest, thereby preventing any remedial orders from taking effect.  Keller Decl., Exh. C.

On June 7, 2019, the ITC published a notice in the Federal Register to inform the public that it had instituted an investigation on May 31, 2019.  Keller Decl., Exh. D.  The ITC instituted the investigation after considering DTI's comments, including its antitrust and anti-competitive arguments, and refused DTI's request that the Administrative Law Judge make a determination regarding DTI's alleged anti-competitive arguments.  *Id*.  The notice defined the parties to the investigation and the scope of the articles under investigation.  In addition to Hyundai and DTI, the parties to the investigation are three foreign entities which have supplied parts to DTI (the "Additional Respondents").  *Id*.  DTI was served with the ITC Complaint on June 4, 2019 (prior to notice of the investigation appearing in the Federal Register) and two days later, DTI's counsel appeared in the ITC investigation (also prior to notice of the investigation appearing in the Federal Register).  Keller Decl., Exh. E.  DTI's response to the ITC complaint is due on June 25, 2019.  DTI has not sought leave of the ITC Administrative Law Judge to extend this deadline.

DTI is fully participating in the ITC's investigation. Discovery in the ITC investigation began on June 7, 2019, and DTI served interrogatories and requests for production on Hyundai on June 10, 2019. Keller Decl., ¶ 8.

## III. ARGUMENT

The Court should deny DTI's motion seeking the extraordinary relief of enjoining Hyundai from participating in a pending ITC investigation. First, the Fourth Circuit has already recognized the ITC's jurisdiction to conduct parallel proceedings and rejected use of the All Writs Act to interfere in such proceedings. Second, the relief sought by DTI is contrary to the statutory scheme Congress established, which clearly anticipates and authorizes such parallel proceedings. Third, no court has ever enjoined an ITC proceeding under the circumstances present here. The only cases that DTI cites *all* involve contracts in which the court determined that a party had voluntarily given up its right to institute ITC proceedings. No such contract exists here, and those cases are inapplicable.

### A. THE ALL WRITS ACT CANNOT BE USED TO OBTAIN THE RELIEF DTI SEEKS.

DTI asks this Court to use its authority under the All Writs Act to prevent the ITC from exercising its jurisdiction to investigate DTI (and its foreign suppliers) and to stop Hyundai from participating in that investigation. However, the All Writs Act does not authorize the federal courts to overrule the division of responsibility between the ITC and the district courts which Congress created.

The All Writs Act provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of *their respective jurisdictions* and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). While this Act "authorizes employment of extraordinary writs, it confines the authority to the issuance

5

of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999) (quoting 28 U.S.C. § 1651(a)). As a result, "commands under the All Writs Act" must be "necessary or appropriate to effectuate and prevent the frustration of orders [the court] has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977).

DTI's proposed injunction fails this test. While it complains that the ITC proceeding constitutes "an affront to the jurisdiction, authority, and dignity of the Court" (Doc. No. 53, DTI Mem. Supp. Mot. Stay at 2), the Fourth Circuit has already rejected that concern in a case DTI failed to cite.

In *Ashlow Ltd. v. Morgan Construction Co.*, the Fourth Circuit held that district courts have no authority under the All Writs Act to interfere with parallel ITC proceedings because the ITC has its own, separate jurisdiction. 672 F.2d 371, 375 (4th Cir. 1982). The Fourth Circuit explained that "Congress has created two separate jurisdictions: One with jurisdiction over 'unfair acts' in connection with the importation of articles from abroad (the [ITC]), and the other with jurisdiction over the validity of domestic patents (the district court)." *Id*. Because Congress created separate jurisdictions, "[t]here is no authority under § 1651 [the All Writs Act] for either jurisdiction to review the actions and decisions of the other." *Id*. District courts lack that authority because the All Writs Act "empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground." *Id.* (quoting *Brittingham v. U.S. Comm'r Int. Rev.*, 451 F.2d 315, 317 (5th Cir. 1971)).

In short, DTI asks this Court to exercise jurisdiction over a parallel ITC proceeding without acknowledging that the Fourth Circuit has already held that this Court has no jurisdiction to do so. *Id*. at 376 (there is "no jurisdiction in the district court to review actions of the

6

[ITC]."); *accord In re Convertible Rowing Exerciser Patent Litig.*, 616 F. Supp. 1134, 1140 (D. Del. 1985) ("Neither a federal district court nor the ITC may transgress upon the jurisdiction of the other.").

DTI's request for relief also ignores the solution Congress enacted to resolve DTI's complaints about parallel proceedings, which provides DTI with the option of seeking a mandatory stay of the ***district court*** action pursuant to 28 U.S.C. § 1659(a):

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission…

DTI has 30 days from the date it was named as a respondent by the ITC to request a stay of ***this*** action. 28 U.S.C. § 1659(a). Presumably DTI has failed to invoke § 1659(a) because its emergency motion seeks the exact opposite of what the statute provides. But Congress did not authorize the result DTI seeks, and the All Writs Act cannot be used to circumvent—and reverse—the procedure Congress did establish. *Cf. Kaisha v. Bombardier, Inc.*, No. 00-cv-549, 2001 WL 1388911, at *2 (C.D. Cal. Mar. 9, 2001) (reviewing the statutory scheme and concluding that "the intent of Congress was to allow ITC and district court actions to proceed simultaneously and further to allow ITC proceedings to take precedence").

The "All Writs Act is a residual source of authority to issue writs that are ***not otherwise covered by statute***." *Pa. Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (emphasis added). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.* As the Supreme Court explained, the All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance

7

Case 3:17-cv-00732-MOC-DSC   Document 54   Filed 06/18/19   Page 7 of 14

with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Correction*, 474 U.S. at 43. Yet issuance of an ad hoc writ is precisely what DTI urges on this Court.

For these and other reasons, every federal court presented with a motion such as this under circumstances such as these has refused to enjoin the ITC proceeding in favor of a parallel district court case. For example, the Central District of California recently denied a motion to enjoin ITC proceedings after holding that the movant had "pointed to no authority by which a district court may enjoin a litigant from pursuing parallel proceedings before the ITC in the circumstances here." *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. 5:17-cv-01388, 2018 WL 8222261, at *1 (C.D. Cal. Dec. 20, 2018); *see also Kaisha*, 2001 WL 1388911, at *3 (denying motion to enjoin ITC proceeding); *Tompkins Seals, Inc. v. West Co.*, 7 ITRD 1788, 1985 WL 4952, at *4 (E.D. Pa. 1985) (same); *In re Convertible Rowing Exerciser Patent Litig.*, 616 F. Supp. at 1140 (same).

The only two cases relied on by DTI do not support DTI's position. (Doc. No. 53, DTI Mem. Supp. Mot. Stay, at 4-5.) In *Ciena Corp. v. Nortel Networks Inc.*, No. 2:05-cv-14, 2005 WL 1189881 (E.D. Tex. May 19, 2005), the district court granted an injunction because the non-movant had contracted in a settlement agreement that "actions for patent infringement between them would be brought in a single forum: the United States District Court for the Eastern District of Texas, Marshall Division." *Id*. at *1. The court found that the movant was "reasonably likely to prevail in proving [the non-movant] breached the forum selection clause" by bringing patent-infringement claims in an ITC proceeding. *Id*. at *6.

Similarly, the issue in *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998 (N.D. Cal. 2013) was "whether a holder of patents essential to an industry standard" could initiate ITC proceedings "seeking an exclusion order and injunctive relief against a party

8

practicing that standard without violating its obligation to license the standard-essential patents on reasonable and non-discriminatory ('RAND') terms." *Id*. at 1000–01.  The district court enjoined the ITC proceedings after holding "that defendant's act of seeking an exclusion order or injunctive relief by the ITC is inconsistent with defendants' RAND obligations at this time." *Id*. at 1008.

Thus, in both *Ciena* and *Realtek Semiconductor*, the moving party identified a contractual obligation that prohibited the non-movant from pursuing an ITC claim.  No such contractual obligations exist here.  *Cf. Hoist*, 2018 WL 8222261, at *1 (rejecting reliance on similar contract-based decisions).  *Ciena* and *Realtek Semiconductor* stand only for the unremarkable proposition that a party's contractual waiver of its rights to pursue an action before the ITC will result in the inability to do so.

This Court should therefore deny the unprecedented relief that DTI requests, which directly contravenes the statutory scheme Congress set forth with respect to ITC investigations.

**B. CONGRESS' STATUTORY FRAMEWORK ANTICIPATES PARALLEL LITIGATION BECAUSE THE ITC PROVIDES ADDITIONAL REMEDIES NOT AVAILABLE IN THIS COURT.**

The distinct remedies available at the ITC provide trademark holders such as Hyundai with relief in addition to that provided by the district court.  When the ITC finds a violation, the ITC generally issues two types of remedial orders, both of which Hyundai has requested: (1) exclusion orders, such as the limited exclusion order requested by Hyundai; and (2) cease-and-desist orders.  *See* 19 U.S.C. § 1337(d) (providing authority to issue exclusion orders); § 337(f) (providing authority to issue cease-and-desist orders).  As demonstrated below, ITC remedial orders differ from district court injunctions in scope and in enforcement, and they carry different penalties for violations.  Given the different purpose of, jurisdiction of, and remedies available

9

through the ITC proceeding, Hyundai has a right to pursue its ITC case in addition to its case before this Court.

Limited exclusion orders direct United States Customs and Border Protection ("CBP") to exclude from importation to the United States any article that infringes a trademark that forms the basis of a Section 337 violation. *See* 19 U.S.C. § 1337(d)(1). The enforcement by CBP provides a significant distinction to district court injunctions, which are enforced through contempt proceedings. Here, the enforcement of exclusion orders at the border avoids potential difficulty enforcing a judgment issued by a district court. Indeed, as the Declaration of David Goodloe submitted herewith shows, it was the CBP's refusal in October 2018 to enforce a district court judgment from the District of Nevada, and its insistence that Hyundai obtain an exclusion order from the ITC, that prompted Hyundai to initiate the ITC investigation at issue here. Goodloe Decl. at ¶¶ 4-7.

Furthermore, the ITC investigation includes as additional parties three of DTI's suspected suppliers. An exclusion order would also prohibit these Additional Respondents from importing (or selling for importation) infringing products for other potential gray market sellers, in addition to prohibiting DTI from importing infringing products. DTI broadly requests that this Court enjoin the ITC investigation even though additional parties are also named as respondents. But DTI has no standing to request that relief on behalf of these unrelated parties.[1]

What is more, the ITC's limited exclusion order would direct CBP to exclude from importation **all** products within the scope of the ITC's investigation as defined in the Notice of

---

[1] A party "must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (*quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (2000)). This requirement includes requests for preliminary injunctive relief, like DTI seeks here. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

10

Institution of Investigation, which includes many sub-categories of service and collision parts and components that infringe the relevant trademarks, as opposed to the limited number of products found infringing in the underlying district court litigation. *Compare, e.g., Certain Graphics Sys., Components Thereof, & Consumer Prods. Containing the Same*, Inv. No. 337-TA-1044, Limited Exclusion Order at 2 (Aug. 22, 2018) ("MediaTek's and SDI's graphics systems and Vizio's televisions containing the same, covered by one or more of claims 1-5 and 8 of the '506 patent . . . are excluded from entry for consumption into the United States . . . ."), *with International Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) (limiting district court injunctions to "devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom").

Accordingly, the remedial orders requested in the ITC Action could exclude any of the sub-categories of investigated products imported by or on behalf of DTI and the Additional Respondents found to infringe, regardless of part and model numbers. This distinction provides a substantial benefit to Hyundai, in that DTI's future infringing products would be barred from importation, without the need to litigate those products anew in district court or at the ITC.

And notably, because the ITC has jurisdiction over the infringing products (so-called "*in rem*" jurisdiction), such products would be excluded even if imported by another entity on DTI's behalf. Indeed, the ITC exclusion order sought by Hyundai would cover infringing products imported by others on behalf of DTI.

In addition to exclusion orders, the ITC's cease-and-desist orders serve to deter domestic activities with respect to the infringing products, such as selling, distributing, marketing, advertising, and importing infringing products. Cease-and-desist orders cover the same range of products as a limited exclusion order, and therefore also differ in scope from the district court's

injunctions. Cease-and-desist orders are enforced differently and carry different penalties for violation than a district court injunction. In particular, cease-and-desist orders are enforced by the ITC, and carry significant civil penalties for violation thereof; Section 337(f) provides for civil penalties of "not more than the greater of $100,000 or twice the domestic value of the articles entered or sold" *on each day the order is violated*. 19 U.S.C. § 1337(f). These penalties provide a significant deterrent to continued infringement by advertising and selling inventory of previously imported infringing products.

## IV. CONCLUSION

For these reasons, the Court should deny DTI's motion to stay the ITC investigation and for preliminary injunction.

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

/s/Kenneth E. Keller
Kenneth E. Keller (CA Bar No. 71450)
*(Admitted Pro Hac Vice)*
Christopher E. Stretch (CA Bar No. 166752)
*(Admitted Pro Hac Vice)*
Vijay K. Toke (CA Bar No. 215079)
*(Admitted Pro Hac Vice)*
Four Embarcadero Center, 22nd Floor
San Francisco, California 94118
Telephone: (415) 983-1000
Email: kenneth.keller@pillsburylaw.com

**WOMBLE BOND DICKINSON (US) LLP**

Hayden J. Silver, III (N.C. Bar. No. 10037)
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2188
Email: Jay.Silver@wbd-us.com

James S. Derrick (N.C. Bar No. 39632)
One Wells Fargo Center, Suite 3500
301 South College Street

Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4913
Email: James.Derrick@wbd-us.com

**HYUNDAI MOTOR AMERICA, INC.**

Jason R. Erb (CA Bar No. 180962)
(*Admitted Pro Hac Vice*)
10550 Talbert Avenue
Fountain Valley, California 92708
Telephone: (714) 965-3393
Email: jerb@hmausa.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically and electronically notify all counsel of record in this case.

/s/Kenneth E. Keller
Kenneth E. Keller (CA Bar No. 71450)
*(Admitted Pro Hac Vice)*
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, California 94118
Telephone: (415) 983-1000
Email: kenneth.keller@pillsburylaw.com