# EXHIBIT A

# pillsbury

Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006 | tel 202.663.8000 | fax 202.663.8007

Kecia J. Reynolds
tel 202.66.8025
kecia.reynolds@pillsburylaw.com

May 3, 2019

**VIA HAND DELIVERY**

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street, S.W., Room 112
Washington, DC 20436

    Re: *Certain Replacement Automotive Service and Collision Parts*
       *and Components Thereof*, Inv. No. 337-TA-_____

Dear Secretary Barton:

    On behalf of complainants Hyundai Motor Company and Hyundai Motor America, Inc. (collectively "Hyundai"), I enclose for filing the following documents in support of Hyundai's request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended. A request for confidential treatment of Confidential Exhibits 16C and 32C is included with this filing.

    Hyundai submits the following documents for filing:

1. An unbound original and eight (8) bound copies of Hyundai's (non-confidential) verified Complaint and the Statement of Public Interest, pursuant to Commission Rules 201.6(c), 210.4(f)(2),210.8(a), and 210.8(b);

2. One (1) CD with the Complaint and all non-confidential exhibits, appendices, and attachments; and one (1) CD with all confidential exhibits, pursuant to Commission Rules 210.4(f)(2) and 210.8(a);

3. Four (4) additional copies of the Complaint and the Statement of Public Interest; four (4) CDs each containing the non-confidential exhibits; and four

(4) CDs each containing the confidential exhibits,[1] pursuant to Commission Rules 210.8(a)(1)(iii) and 210.11(a), for service upon each respondent.

4.  Two (2) additional paper copies of the verified Non-Confidential Complaint for service upon the Embassies of Vietnam and United Arab Emirates pursuant to Commission Rule 210.8(a)(l)(iv);

5.  One (1) certified copy of U.S. Trademark Nos. 1104727, 3991863, 1569538, and 4065195, and one (1) additional copy, on CDs, pursuant to Commission Rule 210.12(a)(9)(i) (included in the Complaint as Exhibits 1-4);

6.  One (1) certified copy of the assignment records and one (1) additional copy, on CDs, of U.S. Trademark Nos. 1104727, 3991863, 1569538, and 4065195 pursuant to Commission Rule 210.12(a)(9)(ii) (included in the Complaint as Exhibits 6-9);

7.  One (1) certified copy and four (4) additional copies, on CDs, of the prosecution history for U.S. Trademark Nos. 1104727, 3991863, 1569538, and 4065195 (attached to the Complaint as Appendix A-D);

8.  A letter and certification pursuant to Commission Rule 201.6(b) and 210.5(d) requesting confidential treatment of Confidential Exhibits 16C and 32C.

Please contact me if you have any questions about this request, or if this request is not granted in full. Thank you for your attention to this matter.

---

[1] For use once appropriate subscriptions to the protective order have been filed pursuant to Commission Rules 210.8(a)(l)(iii) and 210.1 1(a)(l).

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP


_(signature)_

Kenneth E. Keller
Christopher E. Stretch
PILLSBURY WINTHROP SHAW PITTMAN LLP
4 Embarcadero Ctr., Suite 2200
San Francisco, CA 94111
Telephone: (415) 983-1000

Kecia J. Reynolds
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St. NW
Washington, DC 20036
Tel: (202) 663-8025
Fax: (202) 663-8007

*Counsel for Complainants Hyundai Motor America, Inc. and
Hyundai Motor Company*



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006 | tel 202.663.8000 | fax 202.663.8007

Kecia J. Reynolds
tel 202.663.8025
kecia.reynolds@pillsburylaw.com

May 3, 2019

**<u>VIA HAND DELIVERY</u>**

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street, S.W., Room 112
Washington, DC 20436

> Re:    *Certain Replacement Automotive Service and Collision Parts and Components Thereof*, Inv. No. 337-TA-_____

Dear Secretary Barton:

In accordance with Commission Rules 201.6(b) and 210.5, Hyundai Motor Company and Hyundai Motor America, Inc. (collectively "Hyundai") request confidential treatment of Confidential Exhibits 16C and 32C.

Public versions of Confidential Exhibits 16C and 32C have been included in the public exhibits to the Complaint, which are being filed concurrently.

Please contact me if you have any questions about this request, or if this request is not granted in full.  Thank you for your attention to this matter.

Respectfully submitted,

Kecia J. Reynolds
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St. NW
Washington, DC 20036
Tel: (202) 663-8025
Fax: (202) 663-8007

Kenneth E. Keller
Christopher E. Stretch
PILLSBURY WINTHROP SHAW PITTMAN LLP
4 Embarcadero Ctr., Suite 2200
San Francisco, CA 94111
Telephone: (415) 983-1000

*Counsel for Complainants Hyundai Motor America, Inc. and Hyundai Motor Company*

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, DC**

| |
|---|
| **In the Matter of**<br>**CERTAIN REPLACEMENT**<br>**AUTOMOTIVE SERVICE AND**<br>**COLLISION PARTS AND COMPONENTS**<br>**THEREOF** |

**Investigation No. 337-TA-____**

### HYUNDAI MOTOR COMPANY AND HYUNDAI MOTOR AMERICA INC.'S STATEMENT ON THE PUBLIC INTEREST

Pursuant to Commission Rule 210.8(b), Hyundai Motor Company and Hyundai Motor America, Inc. (collectively "Hyundai") respectfully submit this Statement on the Public Interest in support of the concurrently filed Complaint.

Hyundai seeks exclusion of certain replacement automotive service and collision parts and components thereof (the "Accused Products") that infringe Hyundai's federally registered trademarks, U.S. Trademark Registration Nos. 1104727, 3991863, 1569538, and 4065195 (the "Asserted Trademarks"). The Accused Products are unlawfully imported, sold for importation, and sold after importation. Hyundai also seeks any other such remedy as the Commission deems appropriate, such as cease and desist orders prohibiting persons violating Section 337 to cease and desist from importing and sales related activities. The requested remedial orders would not have an adverse effect on the public health and welfare in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the Unites States, or United States consumers. To the contrary, the requested remedies would safeguard Hyundai's investment in its U.S. automotive industry, promote clarity of the origin of replacement automotive service and collision parts, and reduce customer confusion and parts-related safety concerns. Hyundai is committed to serving the U.S. market, as reflected by two of

its vehicles, the Sonata and Elantra, which are manufactured in the United States and were awarded the Top Safety Pick by IIHS for 2019, 2018, and 2017. https://www.iihs.org.

The Commission should not request that the Administrative Law Judge make findings on the public interest in this Investigation because there are no unique circumstances that adversely impact the public interest. To the contrary, recognition and enforcement of intellectual property rights and curtailment of unlawful trade would promote the public interest. The Commission has long recognized a strong public interest in enforcing intellectual property rights. *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Products Containing Same, Including Cellular Telephone Handsets*, Inv. No. 337-TA-543, Comm'n Op. at 150 (June 19, 2007) ("*Baseband Processor*"). In instances when an exclusion order would deprive the public of products necessary for some important health or welfare need, "energy efficient automobiles, basic scientific research, or hospital equipment," the public interest outweighed exclusion. *Spansion, Inc. v. USITC*, 629 F. 3d 1331, 1360 (Fed. Cir. 2010). This is not the case here.

The requested remedial orders would not be contrary to the public interest because: (1) the Accused Products are unlawful "gray market" replacement automotive service and collision parts and components thereof and not necessary for a health or welfare need, (2) genuine U.S. Hyundai replacement automotive parts are readily available, and (3) the Accused Products comprise a small portion of the market and Hyundai is already manufacturing the Accused Products and is satisfying market demand.

**I.    Explanation of how the articles potentially subject to the requested remedial orders are used in the United States**

4813-7598-4277.v2

The Accused Products are replacement automotive service and collision parts and components thereof, including belts, exterior and interior body parts, brake/wheel hubs, cooling system parts, drive train parts, electrical parts, emission parts, engine parts, exhaust parts, fuel/air pumps, oil/air/cabin air filters and parts, heat and A/C parts, ignition parts, steering parts, suspension parts, automatic and manual transmission parts, wheel parts, wiper and washer parts, and accessories bearing marks that violate the Asserted Trademarks under Lanham Act Sections 32(1), 43(a), and 43(c) (15 U.S.C. §§ 1114(1) & 1125(a), (c)). Hyundai has manufactured and sold vehicles and replacement parts bearing the Asserted Trademarks for more than 30 years.

The Accused Products are imported "gray market" replacement automotive service and collision parts intended exclusively for sale and distribution outside the United States but unlawfully imported and falsely sold to U.S. consumers as genuine and authorized Hyundai replacement automotive parts. Such importation and sale after importation likely cause consumer confusion and/or dilution of one or more of the Asserted Trademarks. The Accused Products are sold for importation and/or imported into the United States by proposed respondents Direct Technologies International, Inc. d/b/a DTI, Inc. ("DTI"), AJ Auto Spare Parts FZE, John Auto Spare Parts Co. LLC, and Cuong Anh Co. Ltd. (collectively "Proposed Respondents") and then advertised and sold in the United States at www.dti-parts.com by proposed respondent DTI.

## II. Identification of any public health and welfare concerns

The requested exclusion orders and cease and desist orders would not adversely affect the public health and welfare in the United States. The Accused Products are imported Hyundai "gray market" replacement automotive service and collision parts and components thereof that likely cause consumer confusion and/or dilution of one or more of the Asserted Trademarks. The Accused Products represent a very small subset of the U.S. Hyundai replacement automotive

3

parts market and are limited to "gray market" parts bearing, without authorization, one or more of the Asserted Trademarks.  If the Accused Products were excluded from the United States, U.S. consumers would continue to have access to non-infringing and genuine Hyundai replacement automotive service and collision parts.  Hyundai is more than capable of supplying the market as Hyundai is already meeting market demand for Hyundai replacement automotive service and collision parts.  Non-infringing alternative products exist from other replacement part manufacturers, such as, Replace, ACDelco, Bosch, Delphi Technologies, and Fram.

The Accused Products are not directly related to public health, safety, or welfare, such as military equipment for national security, medical devices, and pharmaceuticals.  *See Certain Radio Control Hobby Transmitters and Receivers and Products Containing the Same*, Inv. No. 337-TA-757, Notice of Issuance of Limited Exclusion Order (Sept. 27, 2011).  To the extent any of the Accused Products might have a *de minimis* use in applications impacting health, safety, or welfare, they could be replaced by authorized genuine Hyundai replacement automotive service and collision parts which are sourced through authorized distribution channels that ensure quality control.  Conversely, DTI sells Accused Products that are damaged:



As such, there are no adverse public health, safety, or welfare implications prohibiting exclusion.

4

4813-7598-4277.v2

### III. Identification of competitive conditions in the United States economy

Exclusion of the Accused Products would not adversely affect competitive conditions in the United States. While Hyundai is more than capable of supplying the market, non-infringing alternative products also exist from suppliers such as Replace, ACDelco, Bosch, Delphi Technologies, and Fram. The relief requested will stop unlawful trade and ensure consumer clarity and fair competition by ending the unauthorized use of the Asserted Trademarks.

### IV. Identification of whether Hyundai and/or third parties have like or directly competitive articles that could replace the Accused Products if excluded

Hyundai is meeting the demand for genuine Hyundai replacement automotive parts protected by the Asserted Trademarks. Additionally, competitive non-infringing replacement automotive parts are available from other sources, such as Replace, ACDelco, Bosch, Delphi Technologies, and Fram. There are no public interest concerns where domestic demand for a complainant's products can be met by the complainant and its competitors whose products do not infringe the complainant's intellectual property rights. *Certain Inkjet Ink Supplies and Components Thereof*, Inv. No. 337-TA-691, Comm'n Op. at 15 (Jan. 28, 2011).

### V. Explanation of how the requested remedial orders would impact U.S. Consumers

It is unlikely that remedial orders would adversely impact consumers. The remedial orders are unlikely to increase customer costs, but even if they did cause a slight increase in customer cost, a price increase alone is insufficient to warrant preclusion of a remedial order. *See Certain Lens-Fitted Film Packages*, Inv. No. 337-TA-406, Comm'n Op. (June 28, 1999).

### VI. Conclusion

For the foregoing reasons, there are no public interest concerns that would preclude the Commission from issuing the remedial orders requested by Complainants.

5

4813-7598-4277.v2

Dated: May 3, 2019                     Respectfully submitted,

Kenneth E. Keller
Christopher E. Stretch
PILLSBURY WINTHROP SHAW PITTMAN LLP
4 Embarcadero Ctr., Suite 2200
San Francisco, CA 94111
Telephone: (415) 983-1000

Kecia J. Reynolds
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St. NW
Washington, DC 20036
Tel: (202) 663-8025
Fax: (202) 663-8007

*Counsel for Complainants Hyundai Motor America, Inc. and Hyundai Motor Company*

6

4813-7598-4277.v2

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, DC

In the Matter of

**CERTAIN REPLACEMENT AUTOMOTIVE SERVICE AND COLLISION PARTS AND COMPONENTS THEREOF**

**Investigation No. 337-TA-____**

## VERIFIED COMPLAINT UNDER SECTION 337
## OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANTS**

Hyundai Motor America, Inc.
10550 Talbert Avenue
Fountain Valley, CA 92708
Tel: 714-965-3000

Hyundai Motor Company
231 YangJae-Dong
Seocho-gu Seoul 137-938
Republic of Korea
Tel: 82-2-3464-1114

**COUNSEL FOR COMPLAINANTS**

Kenneth E. Keller
Christopher E. Stretch
PILLSBURY WINTHROP SHAW
PITTMAN LLP
4 Embarcadero Center Suite 2200
San Francisco, CA 94111
Tel: 415-983-1000

Kecia J. Reynolds
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Tel: 202-663-8025

**PROPOSED RESPONDENTS**

Direct Technologies International, Inc.
d/b/a DTI, Inc.
1800 N.E. 171st Street
North Miami Beach, FL, 33162
Tel:  1-888-653-3337

AJ Auto Spare Parts FZE
Office/Warehouse No. RA08TC06
Jebel Ali Free Zone
Dubai United Arab Emirates
Tel: 971 52 832 73 55

John Auto Spare Parts Co. LLC
King Faisal St, Industrial Area 1
Sharjah, UAE
Tel: 971 6 532 63 40

Cuong Anh Co. Ltd.
Lot 5, Gian Khau Industrial Parks,
Gia Tran Village, Gia Vien District
Ninh Binh Province Viet Nam
Tel: 84 437736079

4813-7598-4277.v2

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................... 1

II.     THE COMPLAINANTS ......................................................................... 4

III.    THE PROPOSED RESPONDENTS ........................................................ 4

IV.     THE HYUNDAI TRADEMARKS AT ISSUE ........................................ 6

        A.      HOW THE ASSERTED TRADEMARKS ARE USED .................... 11

        B.      HMA'S WARRANTY PROGRAM ................................................ 12

V.      THE PRODUCTS AT ISSUE ................................................................ 16

        A.      Accused Gray Market Products ................................................. 16

        B.      Hyundai Genuine Parts ............................................................ 18

VI.     UNLAWFUL ACTS COMMITTED BY RESPONDENTS ......................... 20

        A.      Sale for Importation, Importation, and Sale After Importation of the
                Accused Products .................................................................... 20

        B.      Material Differences Between Hyundai Genuine Parts and the Accused
                Products ................................................................................. 23

VII.    HARMONIZED TARIFF SCHEDULE ................................................... 29

VIII.   OTHER LITIGATION .......................................................................... 29

IX.     DOMESTIC INDUSTRY ....................................................................... 30

        A.      Significant Investment in Plant and Equipment ............................. 31

        B.      Significant Employment of Labor ................................................ 32

        C.      Substantial Investment in the Exploitation of the Hyundai Registered
                Marks ..................................................................................... 32

X.      REQUEST FOR RELIEF ...................................................................... 33

4813-7598-4277.v2

# LIST OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Exhibit 1 | Certified Copy of U.S. Trademark Registration No. 1104727 |
| Exhibit 2 | Certified Copy of U.S. Trademark Registration No. 3991863 |
| Exhibit 3 | Certified Copy of U.S. Trademark Registration No. 1569538 |
| Exhibit 4 | Certified Copy of U.S. Trademark Registration No. 4065195 |
| Exhibit 5 | Hyundai Motor Company and Its Subsidiaries Consolidated Financial Statements as of and for the Years Ended December 31, 2017 and 2016 |
| Exhibit 6 | Certified Assignment Records for U.S. Trademark Registration No. 1104727 |
| Exhibit 7 | Certified Assignment Record for U.S. Trademark Registration No. 3991863 |
| Exhibit 8 | Certified Assignment Record for U.S. Trademark Registration No. 1569538 |
| Exhibit 9 | Certified Assignment Record for U.S. Trademark Registration No. 4065195 |
| Exhibit 10 | State of California Secretary of State Statement of Information for Hyundai Motor America |
| Exhibit 11 | Declaration of Olga Alsua |
| Exhibit 12 | 2018 J.D. Power Awards for quality and dependability to Hyundai, https://www.jdpower.com/Cars/Ratings/Hyundai/2018 |
| Exhibit 13 | Direct Technologies International, Inc. 2018 Florida Profit Corporation Annual Report |
| Exhibit 14 | Receipts from purchase of Gray Market Hyundai Parts from Direct Technologies International, Inc. |
| Exhibit 15 | Photographs of packaging of Gray Market Hyundai Parts from Direct Technologies International, Inc. |
| Exhibit 16C | Confidential Declaration of James Carter |
| Exhibit 17 | Direct Technologies International, Inc. website, www.dti-parts.com |

iii

4813-7598-4277.v2

| Exhibit 18 | 2019 North American Car, Utility and Truck of the Year ("NACTOY") Awards to Hyundai Kona and Genesis G70 |
| --- | --- |
| Exhibit 19 | Hyundai's logo symbol |
| Exhibit 20 | Hyundai 2017 Owner's Handbook & Warranty Information |
| Exhibit 21 | Hyundai 2018 Owner's Handbook & Warranty Information |
| Exhibit 22 | Declaration of Eric Sim |
| Exhibit 23 | Email from DTI to Franklin Sussex Hyundai regarding gray market products, dated Sept. 28, 2017 |
| Exhibit 24 | Direct Technologies International, Inc. parts price list |
| Exhibit 25 | Direct Technologies International, Inc. brochure |
| Exhibit 26 | Hyundai 2019 Owner's Handbook & Warranty Information |
| Exhibit 27 | Built in the USA: www.hyundaiusa.com/why-hyundai/built-in-usa.aspx |
| Exhibit 28 | Hyundai 2019 Accent Owner's Manual |
| Exhibit 29 | DTI Importation Records |
| Exhibit 30 | Insurance Repair with DTI supplied Gray Market Parts |
| Exhibit 31 | Photographs of imported cartons of Gray Market Hyundai Parts |
| Exhibit 32C | Confidential Declaration of David Goodloe |
| Exhibit 33 | Panjiva Report for AJ Auto Spare Parts FZE |
| Exhibit 34 | Panjiva Report for John Auto |
| Exhibit 35 | Panjiva Report for Cuong Anh Co. Ltd. |
| Exhibit 36 | Datamyne Report |
| Exhibit 37 | AJ Auto Spare Parts FZE Contact Information |
| Exhibit 38 | Photographs of AJ Auto Warehouse |
| Exhibit 39 | Cuong Anh Co. Ltd. Contact information |

iv

| Exhibit 40 | DTI April 2019 Pricelist |
|---|---|
| Exhibit 41 | Direct Technologies International, Inc.'s Answer and Counterclaims to Plaintiffs' Complaint, *Hyundai Motor America, Inc. and Hyundai Motor Company v. Direct Technologies International, Inc. dba DTI, Inc.,* USDC-Western District of North Carolina (Charlotte Division), Case No.: 3:17-cv-00732 MOC-DSC |
| Exhibit 42 | AJ Auto Spare Parts FZE, About webpage |

## APPENDICES

| A | Certified File History of U.S. Trademark Registration No. 1104727 |
|---|---|
| B | Certified File History of U.S. Trademark Registration No. 3991863 |
| C | Certified File History of U.S. Trademark Registration No. 1569538 |
| D | Certified File History of U.S. Trademark Registration No. 4065195 |

v

4813-7598-4277.v2

## I.    INTRODUCTION

1.    Complainants Hyundai Motor Company ("HMC") and Hyundai Motor America, Inc. ("HMA") (HMC and HMA are collectively referred to where appropriate as "Hyundai" or "Complainants") request that the United States International Trade Commission ("Commission" or "ITC") institute an investigation under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on the unlawful importation into the United States, sale for importation into the United States, or sale within the United States after importation, of certain replacement automotive service and collision parts that infringe one or more of Hyundai's U.S. Trademark Registration Nos. 1104727, 3991863, 1569538, and 4065195 (Exhibits 1-4) (collectively "Asserted Trademarks").  Hyundai-branded automotive replacement service and collision parts authorized for sale in the United States and bearing one or more of the trademarks asserted in this matter are referred to as "Hyundai Genuine Parts."

2.    HMC, a Korean company, located in Seoul, Republic of Korea is a world-renowned company that manufactures and distributes Hyundai-branded automobiles and authorized Hyundai-branded replacement automotive parts through select distributors in the United States and around the world.  HMC manufactures and distributes automobiles and automobile parts under the Hyundai brand.  HMC is the owner of U.S. Trademark Reg. Nos. 1104727, 3991863, and 4065195.  Exhibits 6, 7 and 9.

3.    Hyundai Motor America, Inc. ("HMA") is a wholly owned subsidiary of HMC and located in Fountain Valley, California.  Exhibits 5 and 10.  HMA is the owner of U.S. Trademark Reg. No. 1569538.  Exhibit 8.  HMA is the exclusive distributor of Hyundai-branded automobiles and authorized replacement parts in the United States.

4.    Hyundai automobiles bearing the Asserted Trademarks are a success in the United States.  Hyundai is committed to serving the U.S. market, as reflected by two of its vehicles

(Kona and G70) capturing titles at the 2019 North American Car, Utility and Truck of the Year Awards ("NACTOY") held in January at the Detroit North American International Auto Show. Exhibit 18. In the 25-year history of NACTOY, only three manufacturers have won two trophies in the same year. Both vehicles have also taken home other industry awards, with the Hyundai Kona being named Car and Driver's Best Subcompact SUV for 2019 and the Genesis G70 receiving recognition as Motortrend's 2019 Car of the Year. Also, in 2018, Hyundai was awarded two J.D. Power awards for quality and dependability. Exhibit 12. Hyundai has an economic interest in the Asserted Trademarks associated with its successful automobiles.

5. An industry exists in the United States related to the articles protected by the Asserted Trademarks, as required by Section 337(a)(2) and as defined by Section 337(a)(3). Hyundai makes significant investments in plant and equipment for activities such as manufacturing, distributing, marketing and advertising, significant investments in employment and capital for the same activities, and makes substantial investments in the exploitation of the Asserted Trademarks through activities such as customer service and support, product development and testing. Exhibit 16C. Most significant is Hyundai's U.S. manufacturing activities for Hyundai automobiles bearing the Asserted Trademarks in the United States. Also, HMA is the exclusive distributor of genuine replacement parts in the United States bearing the Asserted Trademarks.

6. The Proposed Respondents are Direct Technologies International, Inc. d/b/a DTI, Inc. ("DTI"), AJ Auto Spare Parts FZE ("AJ Auto"), John Auto Spare Parts Co. LLC ("John Auto"), and Cuong Anh Co. Ltd. ("Cuong Anh") (collectively "Proposed Respondents"). The Proposed Respondents import into the United States, sell for importation into the United States,

4813-7598-4277.v2

or sell within the United States after importation, Hyundai-branded replacement automotive service and collision parts that bear the Asserted Trademarks.

7.     The Hyundai-branded replacement automotive service and collision parts and components thereof bearing the Asserted Trademarks imported and sold by Proposed Respondents were not intended to be sold in the United States, are not authorized for importation and/or sale in the United States, and infringe the Asserted Trademarks and are Gray Market Hyundai Parts.

8.     When U.S. consumers encounter Gray Market Hyundai Parts, which bear the Asserted Trademarks, but which are otherwise materially different from what U.S. consumers expect from Hyundai Genuine Parts, they are likely to be confused and indeed disappointed. Exhibit 11, paras. 16 and 30-33. Further, such sales of Gray Market Hyundai Parts cause great damage to Hyundai's domestic industry and greatly damage the goodwill established in the Asserted Trademarks.

9.     Hyundai seeks relief from the Commission in the form of a limited exclusion order against the Proposed Respondents for the unlawful importation into the United States, sale for importation into the United States, and sale in the United States after importation of all Gray Market Hyundai Parts. Hyundai further seeks a cease and desist order directing the Proposed Respondents to halt importing, marketing, advertising, demonstrating, warehousing of inventory for distribution, sale, and use of imported Gray Market Hyundai Parts.

10.     Hyundai also seeks entry of a bond during the 60-day Presidential review period to protect Hyundai from further injury due to continued importation by the Proposed Respondents. Hyundai also seeks any such other remedy that the Commission deems appropriate.

4813-7598-4277.v2

## II.    THE COMPLAINANTS

11.    Hyundai Motor America, Inc. ("HMA") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Fountain Valley, California.  Exhibit 10.

12.    Hyundai Motor Company ("HMC") is a Korean company, located in Seoul, Republic of Korea.  Exhibit 5, p. 12.  HMC is a world-renowned company that manufactures and distributes Hyundai-branded automobiles and authorized Hyundai-branded parts through its authorized chain of distribution in the United States and around the world.  *Id.*

13.    HMA is a wholly owned subsidiary of HMC and is the exclusive distributor of those Hyundai-branded automobiles and authorized parts in the United States.  Exhibit 5, p. 12; exhibit 11, para. 3.

14.    HMA has been granted the exclusive license by HMC to distribute Hyundai brand vehicles and Hyundai Genuine Parts in the United States that bear the Asserted Trademarks, and HMA has the right to enforce those rights and/or sub-license those rights to dealers, distributors, and others.  Exhibit 11, para. 5.  HMA only sources replacement parts through Hyundai's authorized chain of distribution for the United States, and only those parts sourced through that authorized chain of distribution are Hyundai Genuine Parts.  *Id.* at para. 4

## III.    THE PROPOSED RESPONDENTS

15.    On information and belief, Proposed Respondent Direct Technologies International, Inc. d/b/a DTI, Inc. ("DTI") is a Florida corporation.  Exhibit 13.  DTI operates as a wholesale distributor of replacement automotive parts, including Gray Market Hyundai Parts, which it advertises and sells on its website www.dti-parts.com.  Exhibits 13 and 17.  On information and belief, DTI imports and sells Gray Market Hyundai Parts purchased from and shipped by AJ Auto Spare Parts FZE from the United Arab Emirates, John Auto Spare Parts Co.

4

4813-7598-4277.v2

LLC from the United Arab Emirates, and Cuong Anh Co. Ltd. from Vietnam. Exhibits 29-31, 32C, and 33-36.

16.     On information and belief, Proposed Respondent AJ Auto Spare Parts FZE ("AJ Auto") has its principal place of business in Dubai, UAE. Exhibit 37. AJ Auto is believed to acquire Hyundai-branded automotive replacement service and collision parts from outside the United States, stockpile these parts in its Dubai warehouse for sale, and ship to DTI in the United States. Exhibits 32C, 33, and 38.

17.     On information and belief, Proposed Respondent John Auto ("John Auto") is a Dubai, UAE company engaged in the importation and sale for importation of Hyundai-branded automotive replacement service and collision parts acquired from outside the United States. John Auto is believed to sell and ship Hyundai-branded automotive replacement service and collision parts to DTI. Exhibits 32C and 34.

18.     On information and belief, Proposed Respondent Cuong Anh Co. Ltd. ("Cuong Anh") has its principal place of business in Ninh Binh Province, Vietnam. Exhibit 39. Cuong Anh is believed to acquire Hyundai-branded automotive replacement service and collision parts from outside the United States, and to sell and ship those parts to DTI in the United States. Exhibits 32C and 35.

19.     On information and belief, AJ Auto, John Auto, and Cuong Anh acquire Hyundai-branded automotive replacement service and collision parts and components thereof from outside the United States, sell for importation, and ship those parts to DTI in the United States. Exhibit 32C. DTI imports into the United States the gray market Hyundai replacement automotive parts secured from AJ Auto, John Auto, and Cuong Anh outside of the United States. Exhibits 29-31, 32C. These products were not intended nor approved by Hyundai to be sold in the United States

4813-7598-4277.v2

and are materially different from the U.S. authorized genuine Hyundai replacement automotive parts. *See* Exhibit 11.

20.     These Gray Market Hyundai Parts differ from authorized genuine Hyundai Genuine Parts in numerous respects. For example, the Gray Market Hyundai Parts are not covered by any Hyundai warranties and often have, among other differences, foreign languages instead of English language on the shipping containers and individual packaging, omitted or different information on the shipping containers and individual packaging, and have a generally different overall image than Hyundai Genuine Parts. Exhibit 11, para. 14. Further, Gray Market Hyundai Parts are not subject to the rigorous quality control standards required for Hyundai Genuine Parts. *Id*. at para. 15.

21.     The Proposed Respondents' unlawful, unfair, and unauthorized importation, sale for importation, and sale after importation of Gray Market Hyundai Parts is a violation of Section 337 and actionable because, *inter alia*, such acts cause or are likely to cause consumer confusion, mistake, and/or deception to the detriment of Hyundai, as well as to the detriment of U.S. consumers. U.S. consumers have come to expect a certain quality, warranty, appearance, and packaging for Hyundai Genuine Parts because of Hyundai's extensive branding, marketing, and quality control efforts in the United States.

## IV.    THE HYUNDAI TRADEMARKS AT ISSUE

22.     HMC and HMA, as the owners of all right, title, and interest in and to the Hyundai Registered Marks, have standing to maintain an action for trademark infringement under the Federal Trademark Statute, Lanham Act§ 32(1) (15 U.S.C. § 1114(1)). Exhibits 6-9. Each of the Hyundai Registered Marks are valid and enforceable, and they establish Hyundai's exclusive right to use the marks in interstate commerce in connection with the

6

goods identified in such registrations.  Hyundai is also the owner of the asserted common

law trademarks.

23.    Hyundai seeks to stop unlawful Gray Market Hyundai Parts bearing the Asserted

Trademarks from entering the United States.

24.    The Asserted Trademarks (Exhibits 1-4) include two distinct designs: (a) the word

mark "HYUNDAI" and (b) the symbol set forth below:



25.    Central to Hyundai's success in the United States has been a unique brand

image, accomplished through the adoption of distinctive and eye-catching trademarks for the

Hyundai Genuine Parts, which are prominently featured in Hyundai's marketing,

advertising, and promotional activities.  Exhibit 19 (www.hyundaiusa.com/about-hyundai/).



26.    The shipping containers and individual packaging for Hyundai Genuine

Parts sold in the United States, like the Hyundai shipping containers and individual

packaging intended for sale in other countries, features Hyundai's valuable trademarks.

Specifically, the Hyundai Genuine Parts feature the HYUNDAI word mark ("HYUNDAI Word Mark") along with the distinctive forward leaning "H" within an oval design as shown here, in Exhibit 28, p. F5, below.






27.     Hyundai has sought to protect its valuable trademark rights through various means, including the filing of federal trademark applications to register such trademarks. Such registrations include U.S. Trademark Registration Nos. 1104727 and 3991863 which cover the HYUNDAI Word Mark, and U.S. Registrations 1569538 and 4065195 which cover the forward learning "H" within an oval symbol shown above.  Exhibits 1-4.  Hyundai has a company department focused solely on brand protection.  Exhibit 32C.

28.     The registered marks listed above are collectively referred to as the "Asserted Trademarks".  Exhibits 1-4 are copies of the federal registrations for each of the respective Asserted Trademarks and attached as Appendices A-D are certified copies of the file histories for each of the respective Asserted Trademarks.

8

29.     In addition to prominently displaying the Asserted Trademarks on the Hyundai Genuine Parts, Hyundai has made the Asserted Trademarks central to its marketing strategy by displaying the Asserted Trademarks on promotional materials, in advertisements, and at sporting, cultural and other events hosted or sponsored by Hyundai to promote Hyundai vehicles and the Hyundai brand in the United States, as shown here.






30.     Hyundai has expended hundreds of millions of dollars on advertising, marketing, and promoting its vehicle brand which features the Asserted Trademarks in the United States.  Exhibit 16C, paras. 66-71.

4813-7598-4277.v2

31.     Hyundai advertises its vehicles, products and services featuring the Asserted Trademarks in the United States through various means, including electronic media (namely television, movies, radio, and the Internet), print media (including newspapers, periodicals, and flyers), and other promotional materials.  *Id*. at para. 70.

32.     Additionally, Hyundai promotes its vehicles containing the Asserted Trademarks in connection with numerous athletic events and sports competitions in the United States.  For instance, Hyundai is an official sponsor of the National Football League and has sponsored multiple Super Bowls. *Id*. at paras. 67-68.  Hundreds of millions of spectators have witnessed these Super Bowls and other marquee sporting events in the United States, further strengthening Hyundai's brand recognition and building up the goodwill in the Asserted Trademarks.  Hyundai has additionally sponsored or supported numerous other sporting events in the United States.  *Id*. at para. 67.



33.     U.S. consumers have come to recognize the Asserted Trademarks and to associate such proprietary indicia exclusively with Hyundai.  Hyundai has acquired a valuable reputation and goodwill among the U.S. public because of such consumer association.  In fact, such advertising, marketing, and promotional efforts have made Hyundai successful, and indeed a household name, in the United States.

4813-7598-4277.v2

34.     Hyundai has not licensed, or otherwise consented to the Proposed

Respondents' use of the Asserted Trademarks or any confusingly similar trademarks.

Exhibit 11, para. 6.

A.     **HOW THE ASSERTED TRADEMARKS ARE USED**

35.     A variety of manufacturers and suppliers from around the world, primarily in

Korea, manufacture Hyundai Genuine Parts according to HMC's specifications.  Exhibit 11,

para. 7.  Hyundai Genuine Parts are used in Hyundai plants in the United States to manufacture

Hyundai vehicles.  Hyundai Genuine Parts are also used in the United States as replacement

automotive parts to service, repair, and/or perform warranty work on Hyundai vehicles in the

United States.

36.     As part of routine quality control, the Hyundai Genuine Parts are designed and

tested for optimum safety, performance, and reliability.  Exhibit 11, para. 10.  In addition, certain

Hyundai Genuine Parts intended solely for sale, distribution, and/or use in the United States are

specifically designed and manufactured in accordance with, and to meet, the applicable United

States standards and regulations, including environmental and federal motor vehicle safety

standards.  *Id*.  Only Hyundai Genuine Parts are covered by the applicable Hyundai warranties.

*Id*. at paras. 10 and 18.

37.     Hyundai Mobis (also known as Mobis Korea or Mobis HQ) is a Korean company

within the Hyundai family of companies.  Exhibit 5, p. 12; exhibit 11, para. 8.  Pursuant to an

arrangement with HMC, Hyundai Mobis is responsible for the sourcing of Hyundai Parts from

third-party manufacturers in Korea and for the distribution of those Hyundai Parts throughout the

world for use on Hyundai vehicles.  Exhibit 11, para. 8.

38.     Hyundai Mobis has distribution centers throughout the world. With respect to the

United States, Mobis Parts America, the U.S. subsidiary of Hyundai Mobis, is responsible for the

11

importation and distribution on behalf of HMA of Hyundai Genuine Parts in the United States and MPA maintains a network of parts distribution centers throughout the United States. Exhibit 11, paras. 9-11; exhibit 32C, sec. II. However, parts that are distributed in foreign areas, markets, regions, or countries other than the United States, are not intended for distribution to or importation into the United States, and agreements that HMC has with its manufacturers and distributors in such foreign areas, markets, regions, or countries outside the United States expressly restrict the sale of these parts to the specific foreign areas, markets, regions, or countries covered by the agreement and do not permit importation into the United States or sale to any third person or entity for importation into the United States. *Id*.

B. **HMA'S WARRANTY PROGRAM**

39. The Hyundai Genuine Parts manufactured for use and/or sale in the United States have material differences from Gray Market Hyundai Parts manufactured for use and/or sale outside the United States. *See supra* para. 20; exhibit 11, paras. 13-14. Gray Market Hyundai Parts are not sourced through Hyundai's authorized chain of distribution and are vulnerable to comingling with counterfeit parts in shipments and warehouses and may be mixed and sold alongside parts that often have physical differences due to such parts being seconds, rejects, damaged during shipping, or defective. *Id*. at para. 15. Thus, Hyundai does not warrant Gray Market Hyundai Parts. *Id*. at 18. Hyundai educates its customers about Hyundai Genuine Parts as shown in the following example from a 2019 Hyundai Owner's Manual. Exhibit 28, p. F5.

4813-7598-4277.v2

**GUIDE TO HYUNDAI GENUINE PARTS**

**1. What are HYUNDAI Genuine Parts?**

HYUNDAI Genuine Parts are the same parts used by HYUNDAI Motor Company to manufacture vehicles. They are designed and tested for the optimum safety, performance, and reliability for our customers.

**2. Why should you use genuine parts?**

HYUNDAI Genuine Parts are engineered and built to meet rigid manufacturing requirements. Damage caused by using imitation, counterfeit or used salvage parts is not covered under the HYUNDAI New Vehicle Limited Warranty or any other HYUNDAI warranty.

In addition, any damage to or failure of HYUNDAI Genuine Parts caused by the installation or failure of an imitation, counterfeit or used salvage part is not covered by any HYUNDAI Warranty.

**3. How can you tell if you are purchasing HYUNDAI Genuine Parts?**

Look for the HYUNDAI Genuine Parts Logo on the package (see below).

HYUNDAI Genuine Parts exported to the U.S. are packaged with labels written only in English.

HYUNDAI Genuine Parts are only sold through authorized HYUNDAI Dealerships.









40.     HMA's warranty program – commonly known and referred to as "America's Best Warranty" – is a critical component in its quality control process and allows HMA to ensure that the value of the Asserted Trademarks is maintained. Exhibit 11, paras. 17-18, 22 and Alsua Exhibits A-I. The warranty program is also essential to the successful marketing of products bearing the Hyundai brand because it provides assurance to the customer that his or her purchase will achieve certain performance standards during the warranty period. HMA has long recognized that the HMA warranty program has substantial value and is an important and necessary part of the automotive goods purchased by its customers. *Id*. at para. 17. The value that the warranties add to Hyundai vehicles is the reason HMA assumes the economic cost of the warranty program and promotes and markets the warranty to customers. The warranties are summarized here.

13



41.    HMA offers a Replacement Parts and Accessories Limited Warranty, along with three other comprehensive warranties.  Exhibit 11, para. 18 and Alsua exhibits A-I; Exhibits 20-21 and 26.  The Replacement Parts and Accessories Limited Warranty is not included for Gray Market Hyundai Parts.  Exhibit 11, paras. 26-27.

42.    The Replacement Parts and Accessories Limited Warranty provides, for a period of 12 months or 12,000 miles, coverage for repair or replacement of any U.S. Hyundai Part that is found to be defective in material or workmanship under normal use and maintenance.  *Id*. at para. 22.  Hyundai's other warranties: (1) the New Vehicle Limited Warranty coverage is for 5 years or 60,000 miles and attaches to automobile purchases and a variety of parts incorporated within such Hyundai automobiles (Exhibit 11, para. 19), (2) the Powertrain Limited (Original Owner) Warranty coverage period is 10 years or 100,000 miles to the original vehicle owner and

4813-7598-4277.v2

covers the powertrain component of Hyundai automobiles (*Id*. at para. 20), and (3) the Anti-Perforation Warranty coverage period is 7 years and covers rust holes that may develop in vehicle body sheet metal due to defects (*Id*. at para. 21) are impacted by the Replacement Parts and Accessories Limited Warranty. Exhibit 11, paras. 18, 21, 23 and Alsua exhibits A-I; Exhibits 20-21, and 26.

43. HMA's various warranties can also overlap with respect to parts coverage. For example, for vehicles within the New Vehicle Limited Warranty coverage period, replacement of certain parts will be covered for 5 years or 60,000 miles under that warranty, which, in effect, "extends" the Replacement Parts and Accessories Limited Warranty coverage period through the remainder of the new vehicle warranty, which is often greater than 12 months or 12,000 miles. Exhibit 11, para. 23.

44. The HMA warranty programs only apply to Hyundai Genuine Parts, which HMA defines in its warranty documents as parts supplied from HMA through Hyundai's authorized chain of distribution. Exhibit 11, paras. 25-27.

45. Parts manufactured for sale and/or intended for use solely outside of the United States, and then imported into the United States, carry no warranty whatsoever from Hyundai in the United States. Exhibit 11, para. 27. In addition, any damage to or failure of a Hyundai vehicle caused by the installation or failure of a Gray Market Hyundai Part is not and would not be covered by any Hyundai warranty. *Id*. at para. 28.

46. Neither HMC nor HMA has authorized the importation of or sale of Gray Market Hyundai Parts in the United States because Gray Market Hyundai Parts are manufactured for distribution, sale and/or intended for use solely outside the United States. Exhibit 11, para. 29.

4813-7598-4277.v2

## V. THE PRODUCTS AT ISSUE

### A. Accused Gray Market Products

47. The Accused Products are Gray Market Hyundai Parts intended for sale in foreign areas, markets, regions, or countries outside the United States and not for importation into the United States, and which feature the Asserted Trademarks, but which are materially different from the Hyundai Genuine Parts. Gray Market Hyundai Parts that have been imported, sold for importation, and/or sold after importation by the Proposed Respondents include service and collision parts falling into the following sub-categories: belts, body exterior and interior parts, brakes/wheel hubs, cooling system parts, drivetrain parts, electrical parts, emission parts, engine parts, exhaust parts, fuel/air parts, heat and A/C parts, ignition parts, steering parts, suspension parts, transmission parts, wheels, wiper and washer parts, and accessories.

48. Replacement automotive collision parts are: Front Bumper, Rear Bumper, Grille, Fender, Bumper Cover, Panel Assembly-Cowl Complete, Reflectors, Fender Bracket, Hood Panel Assembly, Quarter Panel Assembly, Bumper Bracket, Lamp Housing, Trunk Lid, Door Panel Assembly, Door Shell, Covers for Fenders, Bumpers, Cover, Cowl Top Assembly, Windshield Glass, Guard Assembly, Fender Insulator, Lip Assy-Front Bumper, Front Crash Member, Front Bumper Valance (Air Dam), Fender Pillar Moulding, Bumper Moulding, Center Console, Center Pillar, Door Moulding, Grille Moulding, Hood Moulding, Rocker Panel Moulding, Moulding, Rear Bumper Step Pad, Panel Assembly-Under Cover, Spoiler, Sub-Frame, and Wheels.

49. Replacement automotive service parts are: ABS Sensor, A/C Compressor, Actuator, Air Duct, Air Filter, Air Filter Housing, Air Intake Resonator, Alternator, Alternator

16

Regulator, Antennae, Arm Control, Armrest Latch, Automatic Transmission Mount, Axle Knuckle Assembly, Axle Shaft, Ball Joint Bearings, Ball Joints, Battery, Bearings, Bolts, Boot, Bracket Assembly, Brake Caliper Repair Kit, Brake Pads, Front and Rear, Brake Drum, Brake Rotors, Brake Shoes, Bulbs, Bushing Arm for Control Arm, Stabilizer Bar, Shock Absorber, Cabin Air Filter, Cable Assy-Spark Plug, Ignition Cables, Camshaft Plug, Caps for Oil Filler, Radiator, Engine, Oil Reserve, Carrier Assembly-Front End Module, Clips, Clock spring Assembly, Steering Wheel, Column Assembly, Condenser, Control Arm, Coolant Tank, Cooling Fan Resistor, Covers for Engine, Timing Cases, Valves, Crossmember Radiator, Crankshaft Damper, Cylinder Head Plug, Deck Lid, Disk, Clutch, Door Lock and Handle, Door Hinge, Door Latch, Drive Belt, Electric Transmission Oil Pump, Engine Mount, Exhaust, Evaporator Core, Fan Assembly, Fan Blade, Fan Module, Fan Motor, Fan Shroud & Radiator Mounting, Fittings, Floor Pan, Fog Lamp Assembly, Fuel Filter, Fuel-Filler Door Opener, Fuel Injector, Fuel Pump, Fuses, Flywheel, Gasket, Gear Assembly, Air Guard, Headlamp Assembly, Heater Blower Motor Resistor, Hood Latch, Hood-Alarm Switch Pad, Horn, Hoses for A/C, Brakes, Coolant, Radiator,  Hub & Bearing Assembly, Hub without Bearing, Idler Drive Belt Pulley, Idler Timing Belt Pulley, Idle Air Control Valve, Intake Valve, Ignition Coil, Impact Bar Bracket, Instrument Panel, Junction Box Assembly, Key/Smart Key FOB, Key, Lamp Assembly, Lamp Combination, License Plate Lamp, Lifter Valve, Master Switch – Power Window, Mirrors, Motor Assembly Power Windows, Muffler, Nuts for Wheels, Manifold, O-Ring Injector, O-Ring Plugs, Oil Cooler Tube, Oil Filter, Oil Pan, Oil Pan Plug, Oil Pump, Pad Kit-ready Disc Brakes, Parking Brake Shoes, Piston Rods, Pressure Plate, Pressure Plate Clutch, Pump, Purge Valve, Radiator, Radiator Drain Plug, Radiator Support Insulator, Radiator Support Panel, Regulator Assembly, Regulator Motor, Relay, Seals for Crankshaft, Axle, Transmission, Differential, Oil

17

4813-7598-4277.v2

Valve, Camshaft, Sensors for Air Temperature, Ambient Air, Camshaft, Fuel Level, Oil Temp., Oxygen, and Speed, Side/Marker Lamp, Shields for Engine Air Inlet, Splash, Solenoid, Spark Plugs, Stabilizer Bars, Stabilizer Link Assembly, Starter, Steering Knuckle, Struts, Strut Mount, Tensioner Drive Belt, Tensioner Drive Belt Pulley, Tensioner Timing Belt, Tensioner Timing Belt Pulley, Tensioner Timing Chain, Thermostat, Thermostat Housing, Throttle Body, Tie Rod End, Tie Rod Inner, Timing Belt, Timing Chain, Tire Repair Kit, Tire Sealant, Transmitter, Transmission Filter, Transmission Mount, Trunk Hinge, Turn Signal Lamp, Valves for Lifter, A/C Charge, Crankcase, Exhaust, and Solenoid, Valve Body Seal Kit, Washer Reservoir, Water Pump, Wheel Bearing Retaining Ring, Windshield Washer Nozzle, Windshield Washer Pump, and Wiper Blades.

50. Parts within the accessory subcategory are Plate Covers, Emblems, Nameplates, and Ornaments.

51. The sale for importation, distribution, and sale of the accused Gray Market Hyundai Parts by the Proposed Respondents is likely to cause confusion among U.S. consumers as to the source, nature, and/or approval for sale of these products, because the Accused Products imported and sold in the United States are materially different from the authorized Hyundai Genuine Parts, and yet bear the same trademarks as the Hyundai Genuine Parts. Exhibit 11, para. 30.

B. **Hyundai Genuine Parts**

52. The Hyundai Genuine Parts have been specially packaged, distributed, and promoted to meet the consumer demands, customer preferences, and regulations of the United States.

53. First, Hyundai Genuine Parts are covered by the Replacement Parts and Accessories Limited Warranty that provides, for a period of 12 months or 12,000 miles, coverage

18

for repair or replacement of any U.S. Hyundai Part supplied from HMA that is found to be defective in material or workmanship under normal use and maintenance. Exhibit 11, paras. 22 and 25.

54.     Second, Hyundai also undertakes extensive quality control efforts in the United States with respect to Hyundai Genuine Parts. Indeed, while Hyundai has stringent quality control standards for all its products distributed and sold around the world, Hyundai has designed certain quality control measures specific to the Hyundai Genuine Parts to which importers and distributors of Gray Market Hyundai Parts such as DTI do not adhere. Exhibit 11, paras. 9-10 and 12. Such efforts demonstrate Hyundai's commitment to ensuring that U.S. consumers receive the highest-quality Hyundai Genuine Parts. Such quality control measures are discussed in further detail below and include rigorous importation standards and quality control at the U.S. distribution stage.

55.     **Rigorous Importation Standards.** Hyundai Genuine Parts are shipped into the United States in containers which are packed and filled to avoid unintended damage, and to ensure that Hyundai's stringent quality standards are maintained throughout the importation process and that the U.S. consumer receives the Hyundai Genuine Parts in functional and intact condition. *See* Exhibit 11, para. 15.

56.     **Quality Control at the U.S. Distribution Stage.** Hyundai Mobis only ships Hyundai Genuine Parts to its U.S.-authorized distributor, Mobis Parts America ("MPA"), which in turn distributes those parts in the United States. Should any product be damaged or compromised, that product is carefully tracked and ultimately destroyed. MPA maintains a network of Parts Distribution Centers that distribute Hyundai Genuine Parts throughout the United States. Exhibit 11, para. 9.

19

57.     Given the tremendous goodwill associated with the Asserted Trademarks (as described above), any instances where the product fails to meet the stringent quality standards that the consuming public has come to expect significantly harms Hyundai, including the reputation and goodwill it has nurtured and grown in the United States.

## VI.     UNLAWFUL ACTS COMMITTED BY RESPONDENTS

### A.     Sale for Importation, Importation, and Sale After Importation of the Accused Products

58.     On information and belief, Proposed Respondents have, without authorization, sold for importation, imported, and/or sold in the United States Gray Market Hyundai Parts featuring the Asserted Trademarks, which Gray Market Hyundai Parts are materially different from the Hyundai Genuine Parts authorized by Hyundai for sale in the United States and as a result of such material differences are likely to cause confusion, or to cause mistake or to deceive.

59.     In DTI's answer to the complaint in a United States District Court trademark infringement action, DTI admitted that it imported and sold Hyundai-branded replacement automotive parts in the United States.  Exhibit 41, para. 4.

60.     Exhibit 29 shows DTI receives shipments at the Miami port from Proposed Respondents AJ Auto and Cuong Anh coming from outside the United States.  Exhibit 34 shows Proposed Respondent John Auto as an entity also shipping products to DTI in the United States. On information and belief these shippers are importing and shipping Gray Market Hyundai Parts into the United States.  Exhibit 32C and exhibits B-E thereto.

4813-7598-4277.v2

61.    On information and belief, the Proposed Respondents use unauthorized chains of supply and distribution outside the United States to sell for importation, import, distribute, advertise, market, offer for sale, and/or to sell the Accused Products.  Exhibits 29-31.

62.    As shown in Exhibit 38 here, on AJ Auto's social media platform, rows of Hyundai replacement parts and rows of products are in what appears to be AJ Auto's warehouse in Dubai.  On information and belief, AJ Auto sells these Hyundai-branded automotive replacement parts to DTI for importation into the United States.  Exhibit 32C.



4813-7598-4277.v2

63.     On information and belief, Hyundai Gray Market Parts sold and shipped by Proposed Respondents AJ Auto, John Auto, and Cuong Anh are sold by DTI in the United States to service and repair Hyundai automobiles.

64.     Exhibit 30 shows the insurance records for a repair to be made to a 2018 Hyundai Elantra automobile at a repair facility in Winfield, Virginia.  The record further shows that replacement automobile parts, such as a radiator part, air conditioner and heater part, and accessory label part were to be replaced.  The supplier of these replacement parts identified in the report is Proposed Respondent DTI.  The replacement automobile parts are Gray Market Hyundai Parts believed to have been imported by Proposed Respondents.

65.     On information and belief, DTI imports cartons of Gray Market Hyundai Parts, such as those shown in Exhibit 31 here.



22

4813-7598-4277.v2

The cartons identified in Exhibit 31 were intercepted by Customs and Border Protection at the port in Savannah, Georgia as they were being redirected to Proposed Respondent DTI in Florida having been shipped from AJ Auto.

66.     On information and belief, the Proposed Respondents' sale for importation, importation and sale in the United States after importation of the Gray Market Hyundai Parts as shown in Exhibits 29-31 is deliberate and willful, with knowledge of Hyundai's exclusive rights and goodwill in the Asserted Trademarks, and intended to cause confusion, or to cause mistake and/or to deceive by importing and selling Gray Market Hyundai Parts.

67.     On information and belief, on or about April 11, 2019, Chandler Nelsen, sales and customer relations director of DTI, contacted a Hyundai service provider to sell oil filters at a discounted price and also sent an email providing DTI's current parts list.  On information and belief, the parts offered to the Hyundai service provider were Hyundai Gray Market Parts.  Exhibit 40.

68.     Proposed Respondents' infringement of the Asserted Trademarks has caused and continues to cause confusion, mistake and/or deception to U.S. consumers and constitutes willful and deliberate trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C.§ 1114(1). Hyundai thus seeks the relief requested in this action.

B.     **Material Differences Between Hyundai Genuine Parts and the Accused Products**

69.     The Proposed Respondents actively and knowingly sell for importation, import, distribute, advertise, promote, offer for sale, and/or sell in the United States gray market replacement automotive parts bearing the Asserted Trademarks.  The Accused Products are materially different, were not intended for sale or use in the United States, but rather were

4813-7598-4277.v2

intended for sale overseas. Exhibit 22, para. 3. These materially different Accused Products cause consumer confusion and/or dilution of one or more of the Asserted Trademarks.

70. Warranty coverage is a material difference. As shown in Exhibit 17, on DTI's website in very small print at the bottom of its home page (www.dti-parts.com), DTI disclaims any manufacturer's warranty stating:

> DTI Inc. is an independent vendor of parts and does not represent any affiliation with any company, brand, or manufacturer. All parts carry a limited warranty provided by DTI Inc., subject to the terms and conditions of DTI Inc. No other warranty (limited implied or otherwise) by any company, brand, or manufacturer is implied or accorded by DTI Inc. on products carried or sold by DTI Inc.

71. As shown in Exhibit 17, on its website, the link to "Warranty and Return Policy" contains the following:

> Warranty
>
> In order to provide a strong selling point DTI Inc. will back up the quality of its merchandise with a strong warranty. All parts sold will be guaranteed against manufacturing defects from the date of installation on a customer's vehicle for a period of 120 days or 5,000 miles. The defective part will have to be returned to our office together with supporting documentation, i.e. copy of the invoice detailing the installation of the part into the customer's vehicle and a copy of the invoice of the purchase from DTI Inc. After examining the part to determine if there was a manufacturing defect the part will be replaced or, if we don't have it in stock, a refund will be issued. The warranty will be only for the part and will not include the installation. This warranty will not cover any consequential damages or repairs that may have been caused by the defective part. This warranty will not apply to a part that was not installed according to the manufacturer's specification.
>
> Return Policy
>
> Merchandise may be returned within 30 days from the date of purchase. Returns will only be accepted if the part is in original packaging with no damage or indication of being installed. Delivery of returned merchandise is the responsibility of the purchaser.

4813-7598-4277.v2

72. The "warranty" that DTI offers is not equivalent to the Hyundai warranties, yet DTI, through its actions, advertisements, and representations, creates an impression that the Gray Market Hyundai Parts it is offering for sale are genuine Hyundai Genuine Parts, and covered by Hyundai's warranties. The impression left by DTI's actions creates a likelihood of confusion among U.S. consumers regarding the source of DTI's parts and the applicability of Hyundai's warranties to those parts.

73. On information and belief, the Gray Market Hyundai Parts being sold by DTI have not been subjected to the exacting quality and/or safety standards associated with the Hyundai Genuine Parts and are not equivalent to the Hyundai Genuine Parts in quality and/or design. DTI's Gray Market Hyundai Parts may be seconds, rejects, or defective parts, and/or were not sourced from nor imported through Hyundai's authorized chain of distribution. As seen on DTI's website, varying levels of damaged parts are listed for sale.

4813-7598-4277.v2



74.     As such, Complainants are informed and believe that many of the Gray Market Hyundai Parts have material physical differences compared to the Hyundai Genuine Parts.  Thus, Hyundai cannot guarantee the quality and/or safety of Gray Market Hyundai Parts which Proposed Respondents import and sell.  This is especially true where, according to DTI's parts price lists (Exhibits 24 and 40), DTI offers *thousands* of Gray Market Hyundai Parts, all of which, Hyundai is informed and believes, are shipped and imported by AJ Auto, John Auto, and Cuong Anh and imported and sold by DTI.

75.     By way of example, 80 Hyundai Oil filters (Part Number 26300-35504) were purchased in the United States from DTI and inspected and compared to the same genuine U.S.

26

Hyundai Part oil filter. Exhibits 14, 15, and 22, para. 4. As described below, the results of that inspection demonstrated that there are significant material differences between the Gray Market oil filter and the U.S. Hyundai oil filter. *Id*. at para. 5.

76. Complainants allege that the DTI Gray Market oil filters contain the following material differences when compared to U.S. Hyundai oil filters:

a. U.S. Hyundai oil filters are shipped in shipping boxes with appropriate strength, rigidity, and labeling.

b. differences in color, material, printing, labeling, and strength of the shipping box;

c. the U.S. Hyundai oil filter's shipping box contains a PDC "yellow" picking label and the DTI Gray Market oil filter Shipping Box does not;

d. differences with respect to the parts' labels, including differences in the "H" logo, the color of the ink, the shading, and the stripes on the boxes for the individual oil filters;

e. differences in filter media material;

f. differences in the "glue pattern" and perforations on the boxes for the individual oil filters;

g. differences in the identifying wording and lettering on the individual oil filters, including the "H" logo, the font, the spacing of the lettering, and the paint;

h. differences in the filter element of the individual oil filter, including color differences;

i. differences in the "stamping" on the individual oil filters;

j. differences in the date stamps on individual oil filters;

27

k.     differences in the silicon seal on the individual oil filters;

l.     differences in the "casting stamp" with the U.S. Hyundai Oil Filters having a casting stamp which the DTI Gray Market Oil Filters do not have; and

m.     differences in the weight of the product.  Exhibit 22, paras. 5-6.

77.     Despite such differences, on information and belief, at least DTI and AJ Auto are representing to U.S. consumers that its gray market parts are authorized genuine parts and/or new OEM parts when they are not.  Exhibits 23, 25, and 42.

78.     By importing and selling Gray Market Hyundai Parts in the United States, without Hyundai's consent, Proposed Respondents have deprived Hyundai of its ability to control the quality of its brand and products in the United States and misrepresented the origin and quality of the Gray Market Hyundai Parts.

79.     At least, DTI has knowingly used in commerce a reproduction, copy, or colorful imitation of the Hyundai Registered Marks in connection with the sale, offering for sale, distribution, and/or advertising of the Gray Market Hyundai Parts which use is likely to cause confusion or mistake and/or to deceive U.S. customers.  Exhibit 25.

80.     Proposed Respondents use the Asserted Trademarks in such a fashion as to intentionally create a false impression that its goods originate from Hyundai or are sponsored, approved by, managed, and/or affiliated with Hyundai, and to misrepresent the origin and quality of goods sold.

81.     Proposed Respondents' acts were and are likely to and intended to cause confusion and mistake among U.S. consumers and to deceive them as to, among other things, (i) the affiliation, connection, and association with Hyundai; (ii) the origin, sponsorship, or approval

4813-7598-4277.v2

of the Accused Products by Hyundai; and (iii) the nature, characteristics, and quality of the Accused Products or Proposed Respondents' commercial activities.

## VII.  HARMONIZED TARIFF SCHEDULE

82.     Complainants seek a limited exclusion order to prohibit the importation by DTI of all Gray Market Hyundai Parts.  The Gray Market Hyundai Parts have likely been imported by DTI into the United States using the following HTS codes: 8709.99, 8708.99.00, 4010.31.00, 4016.93.00, 7315.11.00, 8413.30, 8421.31.00, 8421.99.00, 8482.10, 8482.20.00, 8483.20.00 8511.50.00 8512.40 8544.30.00 8708.10.00 8708.70.00 8708.93 8708.99.00, 9031.80 and possibly under the following codes: 3917.40.10 (hoses), 8407.32.20 (engines), 8512.20.20 (headlamps), 8708.10.30 (bumpers), 8708.10.60 (fender and panels), 8708.30.50 (breaks and rotors), 8708.50.61 (differential), 8708.70.45 (wheels), 8708.80.16  (suspension systems), 8708.91.50 (radiator), 8708.92.50 (mufflers), 8708.95.05 (air bags), 8708.95.20 (trim and accessories), and 8708.99.41 (parts of powertrain).

## VIII.  OTHER LITIGATION

83.     The Asserted Trademarks have also been asserted in the following district court actions:

a.     *Hyundai Motor America, Inc. and Hyundai Motor Company v. Direct Technologies International, Inc. dba DTI, Inc.* (Western District of North Carolina (Charlotte Division), Case No.: 3:17-cv-00732 MOC-DSC);

b.     *Hyundai Motor America Inc. and Hyundai Motor Company v. Midwest Industrial Supply Co., et al.* (USDC-District of Nevada, Case No.: 2:17-cv-3010 JCM/GWF);

c.     *Hyundai Motor America, Inc., et al. v. Trans World Services, Inc.* (Central District of California, Southern Division, Case No. 8:17-cv-01981-DOC-KES);

29

4813-7598-4277.v2

d. *Hyundai Motor America, Inc., et al. v. Pinnacle Group, LLC, et al.* (Central District of California, Southern Division, Case No. 8:17-cv-00598-CJC-JPR);

e. *Hyundai Motor America, Inc., et al. v. American Surplus Auto Parts, LLC* (Eastern District of Michigan, Case No. 4:16-cv-14429-TGB-SDD);

f. *Hyundai Motor America, Inc., et al. v. Fleet Service Automotive, LLC, et al.* (Eastern District of Michigan, Case No. 2:16-cv-14430-MAG-RSW);

g. Hyu*ndai Motor America, Inc., et al. v. Al Nabaa Auto Spare Parts Trading, et al.* (District of Nevada, Case No. 2:16-cv-02532-RFB-PAL);

h. *Hyundai Motor America, Inc., et al. v. Isher Trading LLC* (District of Nevada, Case No. 2:16-cv-02531-JCM-NJK);

i. *Hyundai Motor America, Inc., et al. v. Rydell Chevrolet, Inc.* (Central District of California, Southern Division, Case No. 8:15-cv-00186-CJC-DFM);

j. *Hyundai Motor America, Inc. v. Pinnacle Group, LLC* (Central District of California, Southern Division, Case No. 8:14-cv-00576-CJC-JPR);

k. *Hyundai Motor America, Inc. v. Brown Motor Sales Co. et al.* (Northern District of Ohio, Western Division, Case No. 3:10-cv-02452).

84. The Asserted Trademarks have also been involved in one administrative proceeding: *Hyundai Motor America, Inc. and Hyundai Motor Company v. CKA Group, Inc.*, TTAB Opposition Proceeding (Oct. 10, 1996). This proceeding is now terminated.

85. There are no other matters where the Asserted Trademarks have been asserted.

## IX. DOMESTIC INDUSTRY

86. A domestic industry exists within the meaning of 19 U.S.C. § 1337 (a)(3) with respect to products bearing the Asserted Trademarks.

4813-7598-4277.v2

A. **Significant Investment in Plant and Equipment**

87.     Hyundai has made a significant investment in plant and equipment in connection with the Hyundai Genuine Parts and Hyundai Registered Marks as described below.

88.     Hyundai has made a significant investment in plant and equipment associated with manufacturing automobiles in the United States which bear the Asserted Trademarks as described in further detail in Confidential Exhibit 16C. Hyundai has a manufacturing facility in Alabama. Exhibit 16C, paras. 3-6. In Hyundai's Alabama manufacturing facility specialized equipment is used to manufacture automobiles bearing the Asserted Trademarks. *Id*. at para. 26.

89.     Additionally, HMA has significant investments in maintaining its United States headquarters in Fountain Valley, California. Exhibit 16C, paras. 7-18. Activities directly related to Hyundai automobiles and Hyundai Genuine Parts, each bearing the Asserted Trademarks and exploitation of the Asserted Trademarks, occur at the Fountain Valley Headquarters. *Id*.

90.     HMA also has five regional offices located across the United States that are responsible for overseeing and managing strategic regional activities aimed in alignment with HMA's national objectives. Exhibit 16C, paras. 19-22. Both HMA's corporate headquarters and regional offices have invested substantially in office and other equipment used to support vehicle sales, service, parts, and warranty operations. *Id.* at para. 27.

B.  **Significant Employment of Labor**

91.     Hyundai has also made a significant investment in the United States in the employment of labor in connection with the manufacture, distribution, promotion, marketing, and advertising of Hyundai automobiles bearing the Asserted Trademarks and distribution and selling of Hyundai Genuine Parts.  Exhibit 16C, paras. 28-36.

92.     Hyundai has also incurred substantial costs associated with call center activities to support Hyundai customers and authorized dealer service functions that includes vehicle repair and warranty work.  Exhibit 16c, paras. 37-38.

C.  **Substantial Investment in the Exploitation of the Hyundai Registered Marks**

93.     Hyundai has made substantial investments in the exploitation of the Asserted Trademarks in the United States through various warranty, quality assurance, research, marketing, and enforcement activities relating to the Hyundai Registered Marks.  Exhibit 16C, paras. 23-24, 61-72.

94.     Hyundai has made a substantial investment in the United States promoting the Asserted Trademarks in advertising during sports, cultural and other programs in the United States.  Exhibit 16C, paras. 66-68.

95.     Hyundai has made a substantial investment in the United States advertising, marketing, and promoting its vehicles which feature the Asserted Trademarks and include Hyundai Genuine Parts.  Exhibit 16C, para 69-71.  These substantial expenditures have contributed to building the goodwill associated with the Hyundai Genuine Parts and thereby exploiting the Asserted Trademarks.

4813-7598-4277.v2

96.     Additionally, Hyundai has made substantial investment in protecting and exploiting Hyundai's rights in the Asserted Trademarks.  As part of its enforcement efforts, Hyundai has vigorously defended its rights in the Asserted Trademarks by instituting various federal district court actions and an administrative proceeding before the Trademark Trial and Appeal Board.  Exhibit 16C, para. 72.

97.     In view of the foregoing, it is apparent that Hyundai has made a significant investment in domestic facilities and equipment, a significant investment in employment of labor, and a substantial investment in the exploitation, including warranty, quality assurance, advertising, marketing and enforcement of the Asserted Trademarks in the United States with respect to products protected by the Asserted Trademarks, thereby establishing a domestic industry within the meaning of 19 U.S.C. § 1337 (a)(3).

## X.     REQUEST FOR RELIEF

Wherefore, by reason of the foregoing, Complainants request that the United States International Trade Commission:

A.     Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to the violations of that section based upon the unlawful importation into the United States, sale for importation, or sale within the United States after importation of Gray Market Hyundai Parts unlawfully bearing the Asserted Trademarks;

B.     Schedule and conduct a hearing on permanent relief pursuant to 19 U.S.C. §§ 1337 (d) and (f) of the Tariff Act of 1930, as amended, and following that hearing;

C. Issue a permanent limited exclusion order pursuant to 19 U.S.C. § 1337 (d) excluding DTI, AJ Auto, John Auto, and Cuong Anh from importing into the United States any Gray Market Hyundai Parts bearing the Asserted Trademarks;

D. Issue permanent cease and desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting DTI, AJ Auto, John Auto, and Cuong Anh from importing, selling, marketing, advertising, distributing, offering for sale or otherwise transferring within the United States any Gray Market Hyundai Parts bearing the Asserted Trademarks or from engaging in the unauthorized use of the Asserted Trademarks;

E. Enter a 100% bond during the 60-day Presidential review period; and

F. Issue such other and further relief as the Commission deems just and proper based on the facts determined by the investigation and the authority of the Commission.

Dated: May 3, 2019

Respectfully submitted,

*Kecia J. Reynolds* (signature)

Kenneth E. Keller
Christopher E. Stretch
PILLSBURY WINTHROP SHAW PITTMAN LLP
4 Embarcadero Ctr., Suite 2200
San Francisco, CA 94111
Telephone: (415) 983-1000

Kecia J. Reynolds
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St. NW
Washington, DC 20036
Tel: (202) 663-8025
Fax: (202) 663-8007

*Counsel for Complainants Hyundai Motor America, Inc. and Hyundai Motor Company*

34

## VERIFICATION OF COMPLAINT

I, Kecia J. Reynolds, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true and correct:

1.      I am a partner at Pillsbury Winthrop Shaw Pittman LLP, counsel to Hyundai Motor Company and Hyundai Motor America, Inc. (collectively "Hyundai") and am duly authorized to sign this Complaint on behalf of Hyundai;

2.      I have read the foregoing Complaint and am aware of its contents;

3.      To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions of the foregoing Complaint have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

4.      To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or any related proceeding.

5.      To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claims, defenses, and other legal contentions set forth within the Complaint are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Executed on this the 3rd day of May 2019.


Kecia J. Reynolds, Esq.
Counsel for Hyundai Motor Company
and Hyundai Motor America, Inc.