# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:17-cv-732-MOC-DSC

| | |
|---|---|
| HYUNDAI MOTOR AMERICA, INC., | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>)<br>) **ORDER**<br>) |
| DIRECT TECHNOLOGIES INTERNATIONAL, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on a Motion for Preliminary Injunction, filed by Defendant Direct Technologies, International, Inc. See (Doc. No. 52). For the following reasons, the motion is denied.

## I. BACKGROUND

### A. The Lawsuit in this Court

On December 21, 2017, Plaintiffs Hyundai Motor America, Inc. and Hyundai Motor Company (collectively "Hyundai" or "Plaintiff") filed this action against Defendant Direct Technologies, International, Inc. ("DTI"), alleging that DTI is engaging in trademark infringement by purchasing Hyundai branded parts abroad, importing the Hyundai branded parts into the United States, and then reselling the Hyundai branded parts in the United States—thus, selling so-called "gray market" auto parts. (Doc. No. 1). After the Court denied DTI's motion to dismiss, DTI filed its Answer in May 2018 and counterclaimed for illegal restraint of trade in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2, exclusive dealing in violation of the Clayton

1

Act, 15 U.S.C. § 14, false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under N.C. GEN. STAT. § 75-1.1 et seq. (Doc. No. 33). The Court denied Plaintiff's motion to dismiss the counterclaims in August 2018, (Doc. No. 44), and Plaintiff filed an Answer in October 2018. (Doc. No. 47). The parties are in discovery and trial in this matter is set for June 2020. See (Doc. No. 50).

**B. The Investigative Action Before the International Trade Commission**

On May 3, 2019, Hyundai initiated an action in the International Trade Commission ("ITC"), requesting that the ITC investigate DTI's and three of its foreign suppliers' purported unlawful importation and sale after importation of gray market replacement automotive service and collision parts and components, in violation of Section 337.[1] (Doc. No. 55-1: Decl. of Kenneth E. Keller, Ex. A). In addition to DTI, Hyundai identified three foreign entities believed to have violated Section 337. (Id. at 4-6). Hyundai has requested that the ITC issue cease-and-desist orders and a limited exclusion order directed at those gray market parts and components that the ITC determines are infringing. (Id. at 33-34).

On May 9, 2019, notice that Hyundai's Complaint had been received by the ITC was published in the Federal Register. (Doc. No. 55-2: Keller Decl., Ex. B). On May 17, DTI submitted comments to the ITC in which DTI presented its antitrust and anti-competitive arguments and requested that the ITC either (1) refuse to institute an investigation or (2) have the Administrative Law Judge determine that the alleged anti-competitive acts were in the public interest, thereby preventing any remedial orders from taking effect. (Doc. No. 55-3: Keller

---

[1] The ITC action is pending as ITC Inv. No. 337-TA-1160; Docket No. 337-3386 (the "ITC Proceeding").

Decl., Ex. C).

On June 7, 2019, the ITC published a notice in the Federal Register to inform the public that it had instituted an investigation on May 31, 2019. (Doc. No. 55-4: Keller Decl., Ex. D). The ITC instituted the investigation after considering DTI's comments, including its antitrust and anti-competitive arguments, and refused DTI's request that the Administrative Law Judge make a determination regarding DTI's alleged anti-competitive arguments. (Id.). The notice defined the parties to the investigation and the scope of the articles under investigation. In addition to Hyundai and DTI, the parties to the investigation are three foreign entities which have supplied parts to DTI (the "Additional Respondents"). (Id.).

DTI was served with the ITC Complaint on June 4, 2019. Two days later, DTI's counsel appeared in the ITC investigation. (Doc. No. 55-5: Keller Decl., Ex. E). DTI's response to the ITC complaint was due on June 25, 2019. Discovery in the ITC investigation began on June 7, 2019, and DTI served interrogatories and requests for production on Hyundai on June 10, 2019. (Doc. No. 55 at ¶ 8: Keller Decl.). DTI filed the pending motion on June 12, 2019. In the motion, DTI seeks an order from this Court, pursuant to 28 U.S.C. § 1651 (the "All Writs Act"), staying the ITC action. More specifically, DTI seeks an order from this Court enjoining Plaintiff from participating in the pending ITC action, and from pursuing, enforcing, or seeking to enforce, an exclusion order, cease and desist order, or other injunctive relief relating to certain replacement automotive service and collision parts and components thereof, pending the resolution of this action. This Court held a hearing in this matter on June 20, 2019, and this matter is now ripe for disposition.

**II.      DISCUSSION**

The ITC was enacted to investigate violations of the trade statute enumerated in Section

337 of the Tariff Act of 1930, as amended.[2]  Congress authorized the ITC to investigate unlawful "importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that infringe a valid and enforceable United States trademark registered under the Trademark Act of 1946." 19 U.S.C. § 1337(a)(1)(C).  If the ITC determines that the trade statute has been violated, then the ITC may exclude the infringing articles from importation into the United States and prohibit domestic activities related to the sale, marketing, advertising, and distribution of infringing articles already within the United States.  Id. § 1337(d) & (f).

Congress authorized and anticipated parallel proceedings in the district courts and the ITC, as the district court and the ITC provide different remedies.  Apparently recognizing the

---

[2]  Section 337 proceedings are initiated by the ITC upon a complaint by a private party although the ITC may institute an investigation on its own motion.  19 C.F.R. § 210–12.  After the ITC institutes a section 337 investigation, the proceedings are referred to an administrative law judge, who conducts the investigation and an administrative hearing.  Id. §§ 210.20–210.44.  In a section 337 investigation, the ITC must determine (1) whether there are imports into the United States, (2) whether there is an industry in the United States, (3) whether there are unfair acts or methods of competition, (4) whether the effect or tendency of the unfair acts or methods of competition is to destroy or substantially injure the industry, and (5) whether the industry is efficiently and economically operated.  At the conclusion of the hearing, the ALJ issues an initial determination.  Id. § 210.53.  The initial decision may be reviewed by the ITC on its own motion or the motion of a party, and the Commission may adopt, reverse or modify the ALJ's determination or, if appropriate, remand for further proceedings.  Id. § 210.53(h)-210.54.
 If the Commission finds a violation of section 337, it then determines the appropriate remedy, which may include an exclusive order, which directs the U.S. Customs Service to bar the subject articles from importation into the United States, or issue a cease and desist order.  Before ordering a remedy, the Commission must evaluate the impact of the ordered remedy on the public interest by considering the effect "upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers."  19 U.S.C. §§ 1337(d) and (f).  Thereafter, the ITC transmits its determination and order to the President, who has 60 days within which to approve the determination or disapprove it for "policy reasons."  Id. § 1337(j).  The final determination is then appealable within 60 days to the Federal Circuit Court of Appeals.  Id. § 1337(c).

4

complications that may arise from parallel proceedings, in 1994 Congress enacted 28 U.S.C. § 1659(a), which states that "[i]n a civil action involving parties that are also parties to a proceeding before [the ITC], at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission…." 28 U.S.C. § 1659.

While Congress has enacted a statute allowing a district court action to be stayed pending an ITC action, there is no corresponding statute for the reverse of that procedure. DTI argues, however, that this Court may nevertheless stay the pending ITC action under the All Writs Act, which provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). For the following reasons, the Court disagrees.

First, as Hyundai notes, in Ashlow Ltd. v. Morgan Construction Co., the Fourth Circuit Court of Appeals held that district courts have no authority under the All Writs Act to interfere with parallel ITC proceedings because the ITC has its own, separate jurisdiction.[3] 672 F.2d 371, 375 (4th Cir. 1982). The Fourth Circuit explained: "Congress has created two separate

---

[3] The "All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." Pa. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985) (emphasis added). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Id. As the Supreme Court explained, the All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." Pa. Bureau of Corr., 474 U.S. at 43.

jurisdictions: One with jurisdiction over 'unfair acts' in connection with the importation of articles from abroad (the [ITC]), and the other with jurisdiction over the validity of domestic patents (the district court)." Id. Because Congress created separate jurisdictions, "[t]here is no authority under § 1651 [the All Writs Act] for either jurisdiction to review the actions and decisions of the other." Id. District courts lack that authority because the All Writs Act "empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground." Id. (quoting Brittingham v. U.S. Comm'r of Internal Revenue, 451 F.2d 315, 317 (5th Cir. 1971)). Thus, under controlling law, the All Writs Act may not be used to circumvent and, thus, reverse the procedure that Congress established.

Next, every federal court presented with a motion under similar circumstances has refused to enjoin the ITC proceeding in favor of a parallel district court case. For example, the Central District of California recently denied a motion to enjoin ITC proceedings after holding that the movant had "pointed to no authority by which a district court may enjoin a litigant from pursuing parallel proceedings before the ITC in the circumstances here." Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc., No. 5:17-cv-01388, 2018 WL 8222261, at *1 (C.D. Calif. Dec. 20, 2018); Kaisha v. Bombardier, Inc., No. 00-cv-549, 2001 WL 1388911, at *2 (C.D. Cal. Mar. 9, 2001) (reviewing the statutory scheme and concluding that "the intent of Congress was to allow ITC and district court actions to proceed simultaneously and further to allow ITC proceedings to take precedence"); Tompkins Seals, Inc. v. West Co., No. 85-4929, 1985 WL 4952, at *4 (E.D. Pa. Dec. 17, 1985) (same); In re Convertible Rowing Exerciser Patent Litig., 616 F. Supp. 1134, 1140 (D. Del. 1985) (same).

In its motion, DTI cites two district court cases to support its argument that a court may, under the All Writs Act, enjoin parties from participating in an ITC action until the district court

6

case is resolved. However, the facts of both cases are clearly inapplicable. First, in Ciena Corp. v. Nortel Networks, Inc., No. 2:05cv14, 2005 WL 1189881 (E.D. Tex. May 19, 2005), the district court enjoined a plaintiff from participating in an ITC action and required the plaintiff to withdraw its ITC complaint. Next, in Realtek Semiconductor Corp. v. LSI Corp., the plaintiff initiated a lawsuit in federal district court regarding the license obligations of certain patents. 946 F. Supp. 2d 998 (N.D. Cal. 2013). The court granted an injunction prohibiting the plaintiff from enforcing any exclusion order issued by the ITC until the district court resolved the issues related to the licensing of certain patent terms. Id. at 1005, 1008-10. In both Ciena and Realtek, however, the parties had agreed to settle their differences in a specific forum. For instance, in Ciena, the Court granted the injunction because the parties had previously entered into a settlement agreement that contained a forum selection clause, requiring them to settle their patent infringement disputes in the Eastern District of Texas. Similarly, the issue in Realtek Semiconductor Corp. was "whether a holder of patents essential to an industry standard" could initiate ITC proceedings "seeking an exclusion order and injunctive relief against a party practicing that standard without violating its obligation to license the standard-essential patents on reasonable and non-discriminatory ('RAND') terms." Id. at 1000–01. The district court enjoined the ITC proceedings after holding "that defendant's act of seeking an exclusion order or injunctive relief by the ITC is inconsistent with defendants' RAND obligations at this time." Id. at 1008. Thus, in both Ciena and Realtek Semiconductor, the moving party identified a contractual obligation that prohibited the non-movant from pursuing an ITC claim. No such contractual obligations exist here. Cf. Hoist, 2018 WL 8222261, at *1 (rejecting reliance on similar contract-based decisions). As Hyundai correctly points out, Ciena and Realtek Semiconductor stand only for the proposition that a party's contractual waiver of its rights to

7

pursue an action before the ITC will result in the inability to do so.

DTI also appears to rely on a first-to-file argument, contending that because this case was filed a year and a half before the ITC action, the ITC action should now be stayed.[4] The first-to-file rule, however, "appears to apply to parallel actions before district courts, not to parallel actions before a district court and an agency." Hoist, 2018 WL 8222261, at *1.

The Court further finds that the ITC action should not be stayed because the distinct remedies available at the ITC provide trademark holders such as Hyundai with relief in addition to that provided by the district court, including exclusion orders and cease and desist orders. See 19 U.S.C. § 1337(d) (providing authority to issue exclusion orders); § 1337(f) (providing authority to issue cease-and-desist orders). These remedial orders differ from district court injunctions in scope and enforcement, and they carry different penalties for violations.[5] For all these reasons, the Court finds that the ITC action should not be stayed.

Although the Court is going to deny DTI's motion, the Court observes that Congress has created a situation in which ITC orders have the potential to have practical, de facto preclusive effects in trademark infringement actions in the federal district courts. The Fourth Circuit Court

---

[4] In response to DTI's motion, Hyundai has submitted the Declaration of David Goodloe, stating that Hyundai decided to initiate the ITC action here because in October 2018 the U.S. Customs and Border Protection ("CBP") refused to enforce a district court judgment from the District of Nevada and insisted that Hyundai must first obtain an exclusion order from the ITC. (Doc. No. 56: David Goodloe Decl. at ¶¶ 4-7).

[5] Furthermore, the ITC investigation includes as additional parties three of DTI's suspected suppliers. An exclusion order would also prohibit these Additional Respondents from importing (or selling for importation) infringing products for other potential gray market sellers, in addition to prohibiting DTI from importing infringing products. Hyundai argues, and it also appears to the Court, that DTI has no standing, however, to request that relief on behalf of these unrelated parties.

of Appeals has already stated, albeit in an unpublished opinion, that "[t]he ITC has full authority to decide trademark claims and its adjudications of unfair trade practice and trademark infringement causes of action are entitled to res judicata [claim preclusion] effect." Baltimore Luggage Co. v. Samsonite Corp., 977 F.2d 571 (4th Cir. 1992). On the other hand, DTI points to the Federal Circuit's recently decision in Swagway, LLC v. International Trade Comm'n, 923 F.3d 1349, 1357 (Fed. Cir. 2019), in which the Federal Circuit held that the ITC's "trademark decisions, like its patent decisions, do not have preclusive effect" in federal district courts. Thus, there is now a circuit split regarding the preclusive effect of trademark decisions by the ITC on the federal district courts.

Congress has created a streamlined way to deal with the problem of infringing products being imported into the United States by allowing the ITC to block importation of the infringing products through exclusion orders. The problem arises when the agency's findings in blocking the imports cannot be overturned by a hearing on the merits in a United States district court. Thus, if the product at issue is exclusively manufactured outside the United States (and cannot be manufactured in the United States), then an ITC exclusion order blocking importation may well shut down the company's business, even if a jury in federal district court finds that the products do not infringe.

Suppose that, in the ITC action in this matter, the ITC finds that the parts that DTI imports have infringed Plaintiff's trademark. The ITC may then issue an exclusion order, banning the importation of the parts. Then, suppose that a jury in this Court adjudicates Hyundai's claims against DTI and finds that DTI has not infringed. If the parts that DTI sells are banned from being imported into this country, then DTI obviously cannot sell those parts, even if a jury in this Court has determined that DTI is not infringing on Hyundai's trademark. Although

9

the ITC has the authority to rescind an exclusion order, this federal district court cannot force the ITC to rescind its own order.[6] For cases such as this one, in which the products at issue are manufactured outside of the United States, the result is that the ITC's orders may effectively nullify jury verdicts in intellectual property cases. In other words, under the current statutory scheme, the orders of an executive agency may trump those of the federal district courts, although the reverse is not true. Parties deserve their matters to be decided by an independent judiciary, not by an agency subject to the political winds. The Third Branch must guard the judicial authority given by the Constitution against alternative courts being set up by agencies of the other branches. Nevertheless, the Court is bound by the current statutory scheme, and the motion for preliminary injunction must be denied.

**IT IS HEREBY ORDERED** that DTI's Motion for Preliminary Injunction, (Doc. No. 52), **is DENIED**.

Signed: July 26, 2019

Max O. Cogburn Jr.
United States District Judge

---

used to rescind an exclusion order entered against a defaulting party even though a federal district court has ruled on summary judgment that there was no patent infringement. See In re Certain Beverage Brewing Capsules, Components, Thereof, and Products Containing Same, USITC Inv. No. 337-TA-929, 2017 WL 11049309, at *8 (U.S.I.T.C. Aug. 15, 2017) (stating that "[w]hile the parties and the ALJ cite instances in which the Commission has rescinded remedial orders based on another tribunal's ruling that a subject patent is invalid, they fail to cite any instance in which the Commission has rescinded remedial orders based on a district court ruling that certain articles do not infringe a subject patent"). The ITC later did temporarily rescind the order while the district court judgment was on appeal. See In re Certain Beverage Brewing Capsules, Components, Thereof, and Products Containing Same, USITC Inv. No. 337-TA-929, 2018 WL 3655799 (U.S.I.T.C. July 30, 2018).